## NORRIS v. CLINKSCALES.

1. EVIDENCE—TRANSACTIONS WITH DECEDENT—CODE, 400, CONSTRUED.—A defendant is not disqualified, under sec. 400 of the Code, from testifying as to a transaction with a decedent in an action commenced by the wife of the decedent in her lifetime, and continued and tried by her executor, when the cause of action is an alleged contract between the deceased wife and the defendant.

2. DISCRETION — EVIDENCE — APPEAL—CASE DISTINGUISHED.— The order of a Circuit Judge in excluding secondary evidence is appealable, when such refusal discloses the commission of errors of law. *Congdon* v. *Morgan,* 14 S. C., 588, *distinguished.*

3. EVIDENCE—LOST PAPER—PRESUMPTION—CASE DISTINGUISHED.— The rule, that the person who had the paper in his possession should be examined, as to the possession of the lost paper, before secondary evidence of its contents can be offered, only applies where the presumption is that he is in possession of the lost paper. *Floyd* v. *Mintsey,* 5 Rich., 373, *distinguished.*

4. CLAIM AND DELIVERY—VERDICT.—In an action in claim and delivery against two defendants, there being no allegation or proof of joint liability or privity of interest, where specific property is proven to be in the possession of each, the verdict should be against each defendant for the possession of the specific property proved to be in his possession, and for such damages against each as are proven for the detention by him.

5. IBID.—PROOF—DAMAGES—CASE DISTINGUISHED.—In a claim and

delivery suit for property wrongfully withheld, it is necessary to prove damages for the detention thereof, if the jury are asked to find damages.   *Levi* v. *Legg & Bell*, 23 S. C., 282, *distinguished.*

6. CHARGE—FACTS—CONST., ART. IV., SEC. 26, CONSTRUED.—Under art. IV., sec. 26, Con. of 1895, any direct reference to the testimony in charging a jury, any expression as to what is in evidence, any remark that would amount to a stating of the testimony in whole or in part, is absolutely prohibited.   But the Judge may make hypothetical statements of fact in order to illustrate the principles of law applicable to the case.   Art. IV., sec. 26, of Con. of 1895, *construed.*

Before EARLE, J., Abbeville, January, 1896.   Reversed.

Action in claim and delivery by E. B. Norris, as executor of J. Estelle Clinkscales, against A. J. and T. L. Clinkscales, jr.   Judgment for plaintiff.   Defendants appeal.

*Mr. Frank B. Gary*, for appellants, cites: *On admission of testimony under sec. 400:* Code, sec. 400; 25 S. C., 231, 238; 3 S. C., 423; 9 S. C., 392; 26 S. C., 160; 33 S. C., 255; 9 S. C., 399; 24 S. C., 592.   *Irregularity of verdict:* 18 S. C., 381; 19 S. C., 489; 30 S. C., 326, 327, 328.   *Charge:* 7 Ency., 15.   *Proof of damages:* 23 S. C., 283; 39 S. C., 458.   *Testimony de bene esse:* 17 S. E. R., 849; 18 Stat., 373; 1 Pet., 355; 15 Wall., 161.

*Messrs. Parker & McGowan*, also for appellants, cite: *On admission of testimony under sec. 400:* 3 S. C., 423; 9 S. C., 392; 25 S. C., 228; 26 S. C., 160; 33 S. C., 255; 24 S. C., 592; 29 S. C., 597; 16 S. C., 632.   *Secondary evidence:* 19 S. C., 601; 1 Green. Ev., sec. 558; 14 S. C., 593; 11 Rich., 537; 17 S. C., 587.   *Irregularity of verdict:* 14 S. C., 385.   *Proof of damages:* 23 S. C., 283; 35 S. C., 489; 39 S. C., 468.

*Messrs. Graydon & Graydon*, contra, cite: *On continuance:* 11 Rich., 151; 11 S. C., 409; 13 S. C., 452; 12 S. E. R., 556.   *Exceptions:* 21 S. E. R., 411; 24 S. E. R., 43, 100; 20 S. E. R., 393.   *Exclusion of testimony:* 28 S. C., 606; 25 S. C., 525; 3 McL., 71; Green. Ev., sec. 24.   *Sec-*

32—47

*ondary evidence:* Green. Ev., sec. 558; 14 S. C., 588; 11 Rich., 537. *New trial:* 25 S. C., 141, 168. *Irregularity of verdict:* 26 S. C., 480; Pom. Rem., 2d ed., 281. *Election:* 2 Rich. Eq., 281. *Damages:* 23 S. C., 282.

Oct. 26, 1896.    The opinion of the Court was delivered by

JUDGE BENET, acting Associate Justice, in place of Associate Justice Gary.    This action for claim and delivery was brought by Jane Estelle Clinkscales to recover from the defendants certain personal property covered by a mortgage, of which she was the assignee.    After the commencement of the suit the plaintiff died, and her father, and executor, E. B. Norris, was substituted as plaintiff.    The cause was heard at Abbeville, at the January term, 1896, before his Honor, Judge Earle, and a jury, and resulted in a verdict for the plaintiff.

The defendants appeal to this Court from the rulings and charge of the Circuit Judge, and from the verdict of the jury, upon various grounds, which are set forth in the "Case" in the form of ten exceptions.

The conclusions arrived at by this Court render it unnecessary to pass upon more than five of the exceptions, and these we shall take up and consider in order.    The appellants' second exception alleges error, "Because the Circuit Judge erred in excluding the testimony of T. L. Clinkscales, jr., under sec. 400 of the Code, when (1) that section of the Code had no application at all; and (2) even if it had been applicable, the door was opened by Mrs. Estelle Clinkscales in her testimony, and the witness had the right under the said section to give his version of the transaction in reply to her."    On the threshold of the main question, involved in this exception, the respondent's counsel make the objection that the testimony was excluded, not under sec. 400, but because it was contrary to the assignment the witness, T. L. Clinkscales, had made on the mortgage.    In support of this view, the "Case" does certainly show that the testimony was objected to by respondent's counsel, "on the ground that

this testimony is contrary to the assignment that the witness has made." This objection was overruled and the testimony admitted. But when Court opened next morning, the trial Judge stated that he had some doubts as to the ruling of the previous day, and he decided to reverse it, and "rule the testimony out, except so much of it as negatived the payment of the money, as these plaintiffs show." It is manifest, however, that although the motion to exclude was not grounded on sec. 400, the exclusion itself was placed upon no other ground. The Circuit Judge said: "The Court rules that the testimony of T. L. Clinkscales must be expunged from the record, so far as it refers to any transaction between him (the witness) and J. P. Clinkscales. He is permitted to testify that Mrs. Estelle Clinkscales paid him no money for his assignment, inasmuch as she testified that she paid him $700 for it, but the Court will not allow him to testify as to any transactions between him, T. L. and J. P. Clinkscales." When it is borne in mind that the inhibition of section 400 refers particularly to testimony as to "any transactions" between the witness and a person deceased; and that J. P. Clinkscales was a person deceased; and that the testimony expunged was that part of T. L. Clinkscales' testimony which recounted "transactions" between him and the deceased person; and that the Circuit Judge in excluding it made use of the term "transaction" five times—a word made technical by the Code in section 400, and used by the Judge in its technical sense—there can be no doubt that the learned Judge based his exclusion of the testimony upon section 400. If any further light were needed, it would be found in the charge to the jury, where the Judge, again referring to the expunged testimony, said, "You can consider nothing as to any transactions between this defendant, T. L. Clinkscales and J. P. Clinkscales, because the law is that in a case like this, no conversation or transaction like this witness here between the witness and a deceased person can be given in evidence." While, therefore, it is true that plaintiff's counsel moved that the testimony be excluded,

"on the ground that this testimony is contrary to the assignment that the witness made," it is also true that in excluding it, the presiding Judge did so upon an entirely different ground, namely, upon section 400 of the Code. Consequently, in deciding the question whether or not the exclusion of the testimony was error of law, we must consider, not the grounds submitted by the counsel, but the reasons expressed by the Judge.

It may seem strange that, after having been on our statute book for nearly thirty years, and after having been construed and elucidated by this Court in innumerable appeals, section 400 of the Code should still appear to be hard to understand and difficult to apply as a rule of evidence; and yet it is not strange when one regards the abnormal length of its periods and the intricate involutions of its phraseology. We can readily believe that no other rule of evidence gives as much trouble in the trials of causes as does the *proviso* of section 400. The first part of it reads as follows: "That (1) no party to the action or proceeding; *nor* (2) any person who has a legal or equitable interest which may be affected by the event of the action or proceeding; *nor* (3) any person who, previous to such examination, has had such an interest, however the same may have been transferred to, or come to, the party to the action or proceeding; *nor* (4) any assignment of anything in controversy in the action, shall be examined (*a*) in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, as (*b*) a witness against a party then prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or as assignee or committee of such insane person or lunatic, when (*c*) such examination, or any judgment or determination in any such action or proceeding, can in any manner affect the interest of such witness or the interest previously owned or represented by him." For the purpose of simplifying this very complex provision of the

Code, we have inserted the figures 1, 2, 3, and 4, and the letters *a*, *b*, and *c*. A careful analysis of this *proviso* of section 400 shows that its purpose, as a rule of evidence, is to exclude the testimony of a witness who may belong to *any one, or more, or to all*, of the classes indicated by the figures 1, 2, 3, and 4, but only when his testimony belongs to *all three* of the kinds described in the division *a*, *b*, and *c*. It describes four classes of persons and three characteristics of testimony.

The four classes of persons are these: 1. A party to the action or proceeding. 2. A person having an interest which may be affected by the event of the trial. 3. A person who has had such an interest, but which has been in any manner transferred to, or has in any manner come to, a party to the action or proceeding. 4. An assignor of a thing in controversy in the action.

The three characteristics of the testimony are these: *a*. In regard to any transaction or communication between the witness and a person deceased, insane or lunatic. *b*. Against a party prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or as assignee or committee of such insane person or lunatic. *c*. When the present or previous interest of the witness may in any manner be affected by the testimony or by the event of the trial.

It will be thus seen that to justify the exclusion of testimony under this *proviso* of section 400, it should be shown to the satisfaction of the trial Judge, *first*, that the witness belongs to one or more or to all of the four classes of persons whose testimony may under certain circumstances be excluded; and, *secondly*, that his testimony partakes of not merely one or two of the disqualifying characteristics classified under *a*, *b*, and *c*, but that it possesses all three of those characteristics. To illustrate: A witness may belong to all four of the classes of persons described under 1, 2, 3, and 4, and his testimony may fall under the divisions *a* and *b*, but

if it does not also fall under division *c*, then it would be error to exclude it. Applying these tests to the case before us, we find that the witness, T. L. Clinkscales, whose testimony was excluded by his Honor, Judge Earle, belongs to three, if not to all four, of the classes of persons indicated in section 400. He is a party to the action, a defendant—class 1. He may be said to be interested in the event of the trial—class 2. He was the mortgagee of the mortgage which was transferred to the plaintiff's testator, and by virtue of which this action was brought—class 3. And he was the assignor of the said mortgage—class 4. We also find that the witness' testimony which was excluded—or, rather, which was first admitted and afterwards expunged—was in regard to transactions with a deceased person, and, therefore, possessed a first disqualifying characteristic—division *a*. It is plain, too, that the interest of the witness would be affected by his examination, or by the judgment rendered in the cause; his testimony, therefore, possessed the third disqualifying characteristic—division *c*. But the record does not show that his testimony was "against a party then prosecuting or defending the action as executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or as assignee or committee of such insane person or lunatic." The testimony is against Jane Estelle Clinkscales, the original plaintiff in the cause, now dead, who prosecuted this action not as any legal representative of the "deceased person," her husband, J. P. Clinkscales, but solely in her own right as assignee of the note and mortgage for value, and as the lawful owner and holder of the same. The fact that since her death the action has been prosecuted by her executor, E. B. Norris, does not change the status of the case in so far as this appeal is concerned. The testimony, therefore, does not possess the second disqualifying characteristic set forth in division *b*. Section 400 is a statute of exclusion intended to restrict section 399, which provides that "no person offered as witness shall be excluded by reason of

his interest in the event of the action." It must as such be strictly construed. Nothing may be included under its provisions but what is clearly and unmistakably expressed in its terms. Having found, therefore, that while the witness, T. L. Clinkscales, may belong to all four of the classes of persons who may, under the conditions set forth in section 400, be forbidden to give testimony possessing the three characteristics described therein, and that his testimony, while it possessed two of the three disqualifying characteristics, yet did not possess all three, we are bound to hold that the testimony should not have been excluded, and that in excluding it the Circuit Judge committed error of law.

The third exception charges error in the Circuit Judge, "In refusing to allow secondary evidence as to the contents of the receipt signed by Estelle Clinkscales, in which she elected to take under the will of her husband, J. P. Clinkscales, and to give up all claim to the property covered by the mortgages in question, when there was sufficient proof going to show that said receipt had been lost or destroyed by fire." Judicial discretion in some of its aspects being a mixed question of law and fact, it is proper to set forth the facts disclosed by the record upon which this exception is based. One of the defendants, A. J. Clinkscales, testified that he turned over to Jane Estelle Clinkscales the things that were left to her in the will, and took her receipt for the things as executor. Upon objection of plaintiff's counsel, the Court ruled that the witness could not go into the contents of the receipt without showing that it was lost and could not be produced. The witness thereupon testified that the receipt was written at Mr. Norris', in Estelle's presence, and that she signed it; that he did not have the receipt; that he left it with Mr. Frank B. Gary, one of the counsel for defendants; that he had not seen the receipt since; that they employed Mr. Murray, of Anderson, to assist in the case, and that the papers were sent to him; that Mr. Gary and he (the witness) searched for the papers in Mr.

Gary's office, and it could not be found; that he was at An-
derson a while after that, and Mr. Murray and his clerk and
he searched for it in his office and it could not be found; that
this search was made after the fire in Mr. Murray's office;
that he had not seen the paper since, and did not know where
it was. Upon this showing it was sought to introduce sec-
ondary evidence of the contents of the paper; and Judge
Earle ruled that "the person who had the paper in his pos-
session should have been examined as to the lost paper.
Unless it be shown by competent evidence that the paper
is lost and cannot be found, then the contents of that paper
cannot be gone into. We can introduce secondary evidence
only when it is shown that the primary evidence cannot be
produced. It may be possible that Mr. Gary found that
receipt after he and this witness made the search." And the
secondary evidence was not admitted. The "Case" shows
that Mr. Gary, one of the defendant's attorneys, and the
first employed, was not at the trial, but was absent in at-
tendance upon the State Legislature, of which he was a
member, and that the Circuit Judge had refused the defend-
ant's motion for a continuance based upon his absence.

This exception raises two questions: *First.* Is the exercise
of judicial discretion, in regard to the admission or exclusion
of secondary evidence, appealable matter to be reviewed by
this Court? And *second.* If appealable and reviewable, did
the Circuit Judge, in the case at bar, commit error of law
in excluding the secondary evidence offered?

Arguing on the first question, counsel for the respondent
contend that the admission or exclusion of secondary evi-
dence is a matter solely in the discretion of the
Judge, and not appealable; and as authority they
cite *Congdon* v. *Morgan*, 14 S. C., 588. We do not
think that case will bear such a construction. Delivering
the opinion of the Court, Mr. Chief Justice McIver referred
to *Floyd* v. *Mintsey*, 5 Rich., 372, and to *Berry* v. *Jordon*,
11 Rich., 75, to show that no uniform rule could be estab-
lished as to the exact amount of evidence necessary to

prove the loss of the instrument before secondary evidence of its contents could be admitted. And he added: "Neither shall we undertake, on this occasion, to lay down an absolute rule upon the subject, for, as it is said in 1 Greenl. on Ev., sec. 558, 'it should be recollected that the object of the proof is merely to establish a reasonable presumption as to the loss of the instrument, and that this is a preliminary inquiry addressed to the discretion of the Judge.' Hence, where the case, as presented to us, does not show that the Judge has violated any of the established rules of evidence in the conduct and determination of this preliminary inquiry, we cannot say that there was any error on his part in admitting the secondary evidence. In this case we are unable to perceive any such violation of the rules of evidence." * * * (After summarizing the facts.) "We do not see that there was any error on the part of the Circuit Judge in holding that the proof of loss was sufficient to let in secondary evidence." And further on he adds: "The preliminary evidence offered here was certainly much stronger than that which was held to be sufficient in *Edwards* v. *Edwards*, 11 Rich., 537." This is a plain recognition of the fact, that while the preliminary inquiry as to the proof of loss of the instrument is addressed to the discretion of the Judge, the exercise of that discretion will be, in a proper case, reviewed by this Court. This Court has always, and very properly, been averse to disturbing the exercise of this discretion in the Court below, having always felt assured that the Judges presiding there would seldom, if ever, overstep the limits of their power and act capriciously and arbitrarily. In *Oliver* v. *Sale*, 17 S. C., 587, it was held: "What proof of loss of a written contract is sufficient to permit secondary evidence of its contents is to a large extent a question of fact to be decided by the Judge, and his discretion will not be disturbed except in very rare cases." (McGowan, A. J.) In *Caulfield* v. *Co. of Charleston*, 19 S. C., 601, it was held that "whether there has been sufficient proof of the loss of original evidence to

justify the admission of secondary evidence must to a great extent be left to the discretion of the Circuit Judge." (McGowan, A. J.) And in the recent case of *Hobbs* v. *Beard*, 43 S. C., 370, it was held that "the loss of a paper is always a preliminary question addressed to the discretion of the presiding Judge, and his ruling is not ordinarily the subject of review by this Court." (Gary, A. J.) These views accord with the opinions of the Courts both of England and of our sister States, and they arise out of the very nature of the case. The term "discretion" implies the absence of a hard and fast rule. The establishment of a clearly defined rule would be the end of discretion. And yet discretion should not be another word for arbitrary will or unstable caprice. Nor should judicial discretion be, as Lord Coke pronounced it, "a crooked cord;" but rather, as Lord Mansfield defined it, the "exercising the best of their judgment upon the occasion that calls for it;" adding, that "if this discretion be willfully abused, * * * it ought to be under the control of this Court." (*Rex* v. *Young*, 1 Burr., 560.) The courts and text writers all concur that by judicial discretion is meant sound discretion guided by fixed legal principles. It must not be arbitrary nor capricious, but must be regulated upon legal grounds—grounds that will make it judicial. It must be controlled by conscience and not by humor. So that when a Judge properly exercises his judicial discretion, he will decide and act according to the rules of equity, and so as to advance the ends of justice. There are two different kinds of discretion that may be exercised by the presiding Judge—one of which is appealable, the other not. In the exercise of his exclusive right to decide a matter of fact, or to control the orderly conduct of trials, the discretion of the Circuit Judge will not be reviewed by this Court. For example: In granting or refusing a new trial on the evidence; or in granting or refusing additional time for argument of counsel; or in deciding whether an admission or confession was made freely and voluntarily, so as to determine its admissibility as evi-

dence; or in permitting a witness to be recalled; or in granting or refusing a motion for a continuance, or the like. In such matters no error of law can be committed, and no appeal can be taken. But to the appealable class in this State belong all instances of the exercise of discretion which may disclose the commission of error of law. And, without going into detail, it is enough for the purpose of this case to say that in deciding the preliminary question whether or not there has been sufficient proof of the loss of the written instrument to justify the admission of secondary evidence of its contents, it is possible that a Circuit Judge may commit error of law in the violation or misapplication of the rules of evidence; and, therefore, his exercise of discretion may be appealed from. And the appeal will lie, not because of any so-called "abuse of discretion"—a phrase unhappily framed, because implying a bad motive or wrong purpose—but because his ruling may appear to have been made on grounds and for reasons clearly untenable. This principle is recognized in *Trumbo* v. *Finley*, 18 S. C., 315, where Mr. Justice McGowan says that the exercise of a Judge's discretion, "as a rule, will not be disturbed, unless it deprives a party of a substantial right which he can show he is entitled to under the law."

In excluding the secondary evidence offered in this case, the Circuit Judge assigned his reasons for his ruling as follows: "The person who had the paper in his possession should have been examined as to the lost paper. Unless it be shown by competent evidence that that paper is lost and cannot be found, then the contents of that paper cannot be gone into. We can introduce secondary evidence only when it is shown that the primary evidence cannot be produced. It may be possible that Mr. Gary found that receipt after he and the witness made the search." In excluding the secondary evidence upon the foregoing grounds, did the Circuit Judge commit error of law? The facts in evidence showed that the existence of the paper, the "receipt," had been admitted by the

other side in the testimony of Jane Estelle Clinkscales, the original plaintiff, taken *de bene esse;* that it had been placed by A. J. Clinkscales, a defendant, in the hands of Mr. F. B. Gary, one of the defendant's counsel; that afterwards Mr. Murray, of Anderson, had been employed to aid as counsel for the defendants; that the papers had been sent to him; that Mr. Gary and the witness had made search for the paper in Mr. Gary's office, and it could not be found; that he, the witness, was in Anderson afterwards, and he and Mr. Murray and his clerk had searched for it in Mr. Murray's office, and it could not be found; that he had not seen the paper since he left it with Mr. Gary; that the search in Mr. Murray's office was made after a fire in that office. Under the circumstances, we think the Circuit Judge committed error of law in excluding the secondary evidence. In the language of Mr. Greenleaf (1 Greenleaf Ev., sec. 558), "it should be recollected that the object of the proof is merely to establish a reasonable presumption as to the loss of the instrument." "Loss, like all other evidential facts, can only be inferentially proved. * * * It is not necessary, therefore, to prove exhaustively that the paper exists nowhere. It is sufficient if the party offering parol proof shows such diligence as is usual with good business men under the circumstances." (1 Wharton Law of Ev., sec. 142.) "The proper limit is where a reasonable person would be satisfied that they had *bona fide* endeavored to produce the document itself." (2 Best Ev., 181, quoting Baron Alderson.) Again, it is laid down in Greenleaf that "if the instrument is lost, the party is required to give some evidence that such a paper once existed, * * * and that a *bona fide* and diligent search has been unsuccessfully made for it in the place where it was most likely to be found." (Sec. 558.) Such, generally speaking, is the measure of preliminary proof exacted of the party who seeks to introduce secondary evidence of the contents of a lost paper. As was well summed up by Mr. Justice Whitner, in *Berry* v. *Jourdon,* 11 Rich., 76: "The party is expected to show

that he has in good faith exhausted, in a *reasonable* degree, all the sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him." As we understand the ruling of the Circuit Judge in the case before us, he exacted a larger measure of proof and applied a stricter rule of evidence. He held that "the person who had the paper in his possession should have been examined as to the lost paper. * * * It may be possible that Mr. Gary found that receipt after he and this witness made the search." We do not think that the rules of evidence sustain Judge Earle in holding, as a *sine qua non*, that "the person who had that paper in his possession should have been examined." It is true that, in *Floyd* v. *Mintsey*, 5 Rich., 373, the Court held that "whenever the writing in question is traced to a particular individual who is alive, he should be called to give some account of the instrument; and if he is dead, inquiry should be made of such persons *as must be presumed to have it in their possession*. The preliminary inquiry may prevent the setting up of a fictitious deed, as it may result in the discovery that no deed was ever executed. * * * The evidence of the loss or destruction of the deed cannot be satisfactory when the persons *who must be presumed to have possession of it* have not been examined." And 1 Phillips on Evidence, 258 (p. 456 in 2d ed.), is cited as authority. But in *Floyd's* case there was no evidence from the grantee, who had twenty years ago gone to Alabama and died; nor had any examination been had of his legal representatives, who were presumed to have the original deed. While in the case at bar there was no presumption that Mr. Gary had the lost paper. A. J. Clinkscales had testified that he and Mr. Gary had searched Mr. Gary's office for the paper, "and it could not be found;" that the paper had been sent to Mr. Murray, of Anderson, and that Mr. Murray and his clerk and the witness had searched for the paper in Mr. Murray's office after the fire, "and it could not be found." While it is true that the paper had been traced into Mr.

Gary's possession, it is equally true that by the testimony of the same witness it had been traced out of his possession and up to the office of Mr. Murray, in Anderson. In connection with the fact that Mr. Gary was not examined in person, it is important to remember that his associate counsel had moved for a continuance on the ground of Mr. Gary's unavoidable absence, he being a member of the State Legislature, then in session; and this motion the Circuit Judge in his discretion had refused. No presumption with reference to the possession of the receipt could properly arise from the mere absence of Mr. Gary upon official duty. And the fact that his associate counsel, Mr. Parker and Mr. McGowan, offered in his absence secondary evidence of the lost receipt, would not encourage the presumption that Mr. Gary may have "found that receipt after he and this witness made the search." In the absence of the presumption that Mr. Gary was in possession of the receipt, we do not think that this is a case for the application of the test or rule laid down in *Floyd* v. *Mintsey*, *supra*, and we are constrained to hold that the Circuit Judge was in error when he ruled that Mr. Gary should have been examined as to the lost paper, and in excluding the secondary evidence offered, because of the fact that Mr. Gary, "the person who had had the paper in his possession," had not been examined. Under his Honor's ruling, it seems that no other secondary evidence was offered, although more of it was in Court, as is shown by an affidavit of Mr. Gary, submitted on a motion for a new trial. After stating "that deponent is informed and believes that said original receipt was destroyed when the office of said Murray & Watkins was burnt," he adds: "that the commission of Mr. Watkins, surviving partner of said firm of Murray & Watkins, is here in Court as proof upon this point, and not opened, as deponent is informed and believes, because it was held that testimony could go no further than possession of deponent." But without this additional testimony, we think it proper to add that, measured by the *quantum* of proof adjudged

to be sufficient in numerous cases in our reports, as well as elsewhere, the case before us came fully up to the standard established by the courts.    See the cases of *Edwards* v. *Edwards*, 11 Rich., 541; *Berry* v. *Jordon*, 11 Rich., 76; *Oliver* v. *Sale*, 17 S. C., 583; *Drake* v. *Ramey*, 7 Rich., 37.    Our opinion, however, is not based upon the *quantum* of proof—for that is the Circuit Judge's peculiar province—but on the ruling that "the person who had the paper in his possession should have been examined as to the lost paper," when this rule can only apply where the presumption is that he is in possession of the lost paper.    And here that presumption was removed by the same testimony that created it.

The fifth exception charges that the "Circuit Judge erred in not granting a new trial, on the ground that the verdict was insufficient, irregular, and improper, in that it did not specify in whose possession each article was, and the value of each, there being two defendants, and not bound jointly." The following is a copy of the verdict: "We find for the plaintiff the following described property, which we value at $410, to wit: one six-horse power Tozer engine, one sixty-saw Pratt cotton gin and condenser, one bay horse "Dixie," one hand-power cotton press, one 3¾ wagon, one saw and saw-mill, all described in the complaint; or in case a delivery thereof cannot be had, then for the value thereof, $410, and $251, the plaintiff's damages for the detention of the same."    This was an action in claim and delivery brought against two defefendants; but there was no allegation and no proof that if liable they were jointly liable.    There was no privity of interest upon which to base a joint responsibility.    They were codefendants, because it was alleged that they were in possession of the property claimed.

The testimony showed—indeed, it seemed to have been admitted—that the defendant, T. L. Clinkscales, never had in his possession any of the property in dispute except the horse "Dixie."    The verdict is general in its form, and is against both the defendants.    The foregoing statement

clearly shows that the verdict cannot be carried into effect.
It is too vague and indefinite.    It cannot be held that T. L.
Clinkscales, for  example, should be made to respond for
more of the property claimed than was proved to have gone
into his possession.    If, as was admitted, he had been in
possession of only the horse "Dixie," he could not be made
liable for more than the delivery of the  horse, or the pay-
ment of its value as found, and damages for its unlawful
detention, if any were proved.    It would be grossly unjust
to hold him responsible for all the property, or its value,
and for all the damages found by the jury.    And yet that
is the effect of the verdict.    A verdict should conform to
the proof.    In this case a verdict, if against the two defend-
ants, should be twofold—against T. L. Clinkscales for the
delivery of the specifie property proved to have been wrong-
fully in his possession, or for its value as assessed, if deliv-
ery cannot be had, and for such damages as may be proved;
and similarly, but separately, against A. J. Clinkscales.  We
think the appellants' fifth exception is well taken, and hold
that the Circuit Judge erred when he refused the motion for
a new trial based upon the form of the verdict.

The ninth exception is as  follows: "Because the Circuit
Judge misled the jury and erred, when he charged generally
that in claim and delivery cases it is not necessary to prove
damages.   In answer to a statement from Mr. McGowan, that
there was no proof as to damages, the Judge said: 'In the case
of *Levi* v. *Legg & Bell*, there was not a particle of proof as to
damages, but I carried the case up to the Supreme Court, and
that Court held that it was not necessary to prove damages.
If the property was wrongfully withheld, it was not
necessary to prove damages.' "   A perusal of the case
referred to in the charge of the Circuit Judge, *Levi* v.
*Legg & Bell*, 23 S. C., 282, shows that he misapprehended the
decision of this Court in that case.    The point decided was
one of pleading, not one of proof.    The Court, by Mr. Jus-
tice McIver, held that it was not error in the Circuit Judge
to charge the jury, that in a claim and delivery case damages

followed as a corollary, and it was sufficient that damages be claimed in the demand for judgment. In that case there was no allegation of damages, but only a claim for them in the demand for relief; and this Court held that in such cases damages need not be specially alleged, and that it was sufficient that they be claimed in the demand for relief. But it was not held that "it was not necessary to prove damages," as his Honor, Judge Earle, instructed the jury. It is elementary that a jury must "a true verdict give according to the evidence;" that a verdict, or a part of a verdict, unsupported by some evidence, cannot stand, and should be set aside forthwith; and that in finding damages, as in finding any other verdict, the jury must be governed by the evidence on that point. The verdict must accord with the proof. If there be no proof of damages, there can be no true verdict for damages. In the case before us, the Circuit Judge was clearly in error when he charged the jury that it was not necessary to prove damages if the property was wrongfully withheld. While it may not be necessary in a suit for claim and delivery to allege damages, but only to claim them in the demand for relief, it is indispensable to prove damages; otherwise a verdict for them cannot stand.

The sixth and eighth exceptions of the appellants will be considered together, the same ground being covered by both—namely, a charge that the Circuit Judge committed error of law by charging the jury on the facts, and expressing his own opinion on the same. The sixth reads as follows: "Because the Circuit Judge erred when he charged the jury as follows on the question of estoppel, viz: 'So far as T. L. Clinkscales is concerned, he assigned this mortgage to Mrs. Estelle Clinkscales for value, as he says, and he is now in possession of this property, or a part of it; and even if there was no proof as to what was due, T. L. Clinkscales would be estopped; for, you observe, T. L. Clinkscales put Mrs. Clinkscales in a position which she would not have occupied except for the position he put her in, if this is so. And what I have said as to the

T. L. Clinkscales mortgage also applies to the Fleetwood Clinkscales mortgage, so far as the plaintiff is concerned.'" The eighth exception reads as follows: "Because the Circuit Judge charged directly on the facts, and expressed his opinion on the same, when he charged the jury in reference to the 'receipt' and an 'election' thereunder, as follows, viz: 'Did he undertake, for instance, to give her corn, which had already been consumed? She can't be said to elect between that corn and this property, because the corn was not there to take.'" It is contended for the appellants, that in charging the jury in the manner above set forth, the Circuit Judge violated the provisions of article IV., section 26, of the Constitution of this State. The case at bar was tried at the January term, 1896. The new Constitution went into effect "from and after the 31st day of December, in the year 1895." The constitutional questions raised here, therefore, must be considered in the light of the new Constitution. Section 26, of article IV., reads thus: "Judges shall not charge juries in respect to matter of fact, but shall declare the law." If this were *res integra*, the task of interpretation and construction would be comparatively easy. But this Court must take a judicial notice of the fact, that section 26, as it now stands, differs very materially from section 26 as it appeared in the old Constitution. A clause having been struck from the Federal Constitution by amendment, Chief Justice Marshall held that it might still be referred to, because, "It aids in the construction of those clauses with which it was originally associated." *Fletcher* v. *Peck*, 6 Cranch., 139. We may not, therefore, ignore section 26 of the old Constitution; indeed, a candid construction of the new section demands a careful comparison with the old. The differences between the two are made manifest by placing them side by side.

| CONSTITUTION OF 1868. | CONSTITUTION OF 1895. |
|---|---|
| *Art. IV. Sec. 26.* "Judges shall not charge juries in respect to matters of fact, *but may state the testimony and declare the law.*" | *Art. IV. Sec. 26.* "Judges shall not charge juries in respect to matters of fact, *but shall declare the law.*" |

The first clause of the old section remains unchanged: "Judges shall not charge juries in respect to matters of fact." The second clause has been changed in two important particulars: First. The permission to "state the testimony" has been omitted. Second. The permission to "declare the law" has been changed into a mandate. Instead of the former permissive clause, "Judges * * may * * declare the law," we find the now imperative provision, "Judges * * shall declare the law." In this case we are more especially concerned with the first of these two important changes, namely, the leaving out of the new section the permission to state the testimony. And in construing the section as it now appears in the Constitution, we must endeavor to ascertain and give effect to the true meaning of the section, and to the real object and intention of the framers of the new Constitution in making this material change. Light and aid in this investigation will best be found by examining the long line of decisions of this Court in which provisions of the old section have been construed with great care and from every possible point of view. Art. IV., sec. 26, has received interpretation and construction by this Court in some sixty cases, beginning with *Redding* v. *Railroad Co.*, 5 S. C., 69, and ending with *Brock* v. *O'Dell*, 44 S. C., 29. Until the adoption of the Constitution of 1868, under the common law and the practice of the courts of this State, our Circuit Judges had the power to charge juries upon the evidence as well as upon the law. After the case was closed on both sides, the Judge summed it up to the jury. In this "summing up"—the old name applied to a Judge's charge, and the name still used in the English courts—it was customary to state to the jury the issues involved, to explain the law applicable to the case, and to recapitulate the testimony, so as to refresh the minds of the jurors and enable them to apply the law to the testimony, and to pass intelligently upon it. It was competent for the Judge to give the jury his opinion upon the facts as well as upon the law, provided he did not actually take the decision of the case

from the jury, but left it to them to find a verdict according to their own opinions. This was the practice for many years throughout all the States, and it still obtains in the Federal courts. But this power to comment on the testimony has at various times, and in varying degrees, been abridged in the respective States by constitutional or statutory limitations. No effort has been made, however, so far as we are aware, by congressional legislation to deprive the Judges of the Federal courts of this power, which the States, piece-meal, have taken from the Judges of the State courts. There is no doubt this power had been greatly abused. Not unfrequently Judges evinced partisanship in their charges and moulded verdicts to their will; and as frequently juries shirked responsibility and really adopted the opinion of the Judge, finding their verdict as he directed. It was to put a stop to this, and to secure the constitutional right of trial by a jury and not by a Judge, that the various limitations on this common law power were imposed by constitutions or by statutes. It is instructive to note the views expressed by the courts of last resort in this State while the common law power was exercised. In *State* v. *Casados*, 1 N. & McC., 98, Mr. Justice Cheves held that "it is the right, and often the duty, of the presiding Judge, in the examination of questions of complicated facts, to give the aid of his discrimination, experience, and judgment to the jury. If he finally and distinctly submits the question of fact to the jury as a matter within their peculiar province, and on which they have a right to determine for themselves, there can be no cause for this Court to interfere. There may be extreme cases, which I hope will never exist, where a Judge, becoming insensible to the duties of his high station, may forget that impartiality which he is sworn to practice—a quality which graces while it strengthens the authority of the bench. If, forgetting the duty of impartiality, a Judge becomes a partisan, this Court must interfere." It had been held in a previous case (*State* v. *Bennett*, 2 Tread., 692), by Mr. Justice Nott, that "al-

though it is the province of the jury to judge of the facts, and of the Judge to determine the law, yet the Judge is not precluded from giving his opinion on the facts. It is his duty to aid the jury in forming an opinion of the evidence, as well as the law, which are frequently so blended that it is difficult to take a distinct and unconnected view of each separately. The whole case was finally and fairly left to the jury." In *Devlin* v. *Kilcrease*, 2 McM., 428, the Court cites with approval the *Bennett* and *Casados* cases, as laying down "the practice in all common law courts." It refers to "the frequency of such grounds of appeal;" and Mr. Justice Richardson quotes from Lord Brougham, as "high authority," the following, "commending the judicial character and conduct of Lord Ellenborough," namely: "Lord Ellenborough was not one of those Judges who, in directing the jury, merely read over their notes and let them guess at the opinion they have formed, leaving them without any help or recommendation in forming their own judgments. Upon each case that came before him he had an opinion; and while he left the decision to the jury, he intimated how he thought himself. This manner of performing the office of Judge is now generally followed and most commonly approved." * * * "And I may add," says Mr. Justice Richardson, "such is the well-settled practice in South Carolina." In the case of *Kirkwood* v. *Gordon*, 7 Rich. L., 474, the will of Gordon had been attacked on the ground of lunacy, want of capacity, and undue influence. Judge O'Neall had said to the jury that "there was no evidence of insanity, lunacy or want of capacity sufficient to destroy the will. Still," he adds in his report, "this was my mere opinion and advice; they were left at liberty, if they chose so to do, to find against the will. So, too, I told them there was no evidence of undue influence. * * * If I seemed to argue the case for the will, it perhaps arose more from the preponderance of the facts on that side. It is, however, true that I did say to the jury, as I closed my charge, that the objections to the will seemed to

me to be more shadowy than any which had ever been presented to me. The jury found for the will." One of the grounds of appeal charged that "the presiding Judge, instead of submitting the case to the jury on the testimony, argued it to them with as much feeling, force, and earnestness as did the counsel for the executor." Mr. Justice Glover, speaking for the Court of Appeals, said: "This Court has acted on the maxim, *ad quæstionem legis, respondent judices; ad quæstionem facti, respondent juratores.* To preserve the latter branch of this maxim, it will hardly be contended that a Judge shall simply recapitulate the evidence, and play the part of a mere automaton, and not direct the attention of the jury to the relevancy and sufficiency of the evidence. * * * His experience should light their path and lead them to a correct conclusion, not controlled by his opinion, but by the evidence. * * * He must instruct the jury on the facts, not control their verdict; enlighten their understanding, not inflame their passions; and, above all, the discharge of judicial duties demands impartiality. * * * This tribunal cannot say, in the language of counsel, that the presiding Judge moulded the verdict." The pithy style of this decision recalls to mind, and tempts us to quote, the quaint advice given by Lord Bacon to Mr. Justice Hilton, in regard to summing up cases to a jury: "You should be a light to open their eyes, but not a guide to lead them by the noses." In *State* v. *Smith,* 12 Rich. L., 439, one of the last cases on appeal under the old system, the learned Associate Justice, Job Johnston, delivering the opinion of the Court of Appeals, stoutly maintained this "right of the Judge to advise the jury on the facts," saying: "This right has been too often sustained to remain the subject of the least doubt. It is entirely reasonable and proper, and its exercise is not unfrequently called for by duty and expediency. * * * It is not difficult to discover that such a procedure may be disagreeable and tend to the disappointment of interested parties; but to the cause of justice, of which both Judge and

jury are the sworn ministers, it can, when judiciously exercised, scarcely fail to be satisfactory." These cases sufficiently indicate the nature of the right and the extent of the power exercised by the Judges of this State in charging juries under the old common law practice, which right was abridged and power limited by the Constitution of 1868, and still further abridged and limited by the Constitution of 1895. It is proper to ascertain the extent of that abridgment and limitation, first, by the Constitution of '68, and afterwards by that of '95.

Following the example of other States, and, indeed, adopting the very words of some of the other State Constitutions, our Constitution of 1868 provided (art. IV., sec. 26,) that "Judges shall not charge in respect to matters of fact, but may state the testimony and declare the law." This provision superceded the common law in this regard. It took away from the Circuit Judge the right he formerly had—in the language of the cases just cited—"to advise the jury on the facts;" or "to instruct the jury on the facts;" or to "direct the attention of the jury to the relevancy and sufficiency of the evidence;" or to "intimate how he thought himself;" or "to aid the jury in forming an opinion on the evidence," by "giving his opinion on the facts;" or "in the examination of questions of complicated facts, to give the jury the aid of his discrimination, experience, and judgment." Very soon appeals came up from the courts below, charging violations of this constitutional provision; and they continued to come until section 26 had been interpreted and construed nearly sixty times by this Court. Its object, meaning, and scope have repeatedly been declared in clear and unequivocal terms. For example, in the first case in order of time, *Redding* v. *Railroad Co.*, 5 S. C., 69, Mr. Justice Willard said: "Considering together the parts of this section, it is quite clear that its sole intention was to prevent judges from forcing upon the juries their own convictions as it regards matters of fact. The juries are the judges of such matters, and cannot properly look to the Court for a con-

trolling view of the proper conclusions of fact; nor can the Court, on the other hand, employ its influence over the minds of jurors to force upon them its conclusions in such cases." This view was approved by Mr. Chief Justice Moses, in *State* v. *Green*, 5, S. C., 66–7. Mr. Justice McIver, in *State* v. *White*, 15 S. C., 392, held that "the real object of this clause of the Constitution is to leave the decision of all questions of fact to the jury exclusively, uninfluenced by any expression of opinion by the Judge, whose position would very naturally add great weight to any opinion he might express upon any question of fact arising in a case." And on page 393: "The object of the constitutional provision is to preserve the jury from being in any way influenced by the Judge's opinion as to the facts." It was concisely stated by Mr. Justice McGowan, in *Wood* v. *Railroad Co.*, 19 S. C., 581, that this provision of the Constitution "was intended to exclude the influence of the Judge in moulding verdicts." Mr. Chief Justice Simpson said, in *State* v. *Howell*, 28 S. C., 255: "We have construed this section to mean, that while trial judges may state the testimony, and so arrange it as to enable the jury to apply it to the legal points involved, yet that they cannot convey to the jury, either expressly or impliedly, their opinions as to the force of said testimony upon any question of fact at issue between the parties. In other words, that the jury must be left perfectly free in reaching a conclusion upon the testimony introduced, untrammeled by any intimation from the Judge as to whether a certain fact at issue has been proved or not." And Mr. Justice Pope, speaking for this Court, in *Moore* v. *Railroad Co.*, 38 S. C., 31, clearly announced the same view thus: "What is meant by the Judge charging upon the facts? It seems to us it may be said to occur when, in the progress of a trial, the Circuit Judge conveys by word his opinion upon the sufficiency or insufficiency of certain testimony in determining, by the jury, some fact at issue between the parties litigant. It must be by charge—that is, oral or written statements of the judge to the jury. It must be an opinion

on some matter of fact. It must be such an expression of opinion on a matter of fact that thereby the jury are made to know what is his estimate of the truth or falsity of some matter in testimony; and, lastly, such an expression by the Judge must relate to some matter of fact at issue between the parties." Similar views are expressed in *Benedict* v. *Rose*, 16 S. C., 630; *Woody* v. *Dean*, 24 S. C., 504–6; *State* v. *Addy*, 28 S. C., 13–15; *State* v. *Norton*, 28 S. C., 578–9; *State* v. *Jacob*, 30 S. C., 138–9; *Richards* v. *Munro*, 30 S. C., 290–1; *State* v. *James*, 31 S. C., 235–7; *State* v. *Williams*, 31 S. C., 258; *State* v. *Wyse*, 32 S. C., 54–5; *Durham* v. *Pagett*, 39 S. C., 76–7; *State* v. *Ezzard*, 40 S. C., 322. In the light of these and other cases, no doubt is left about the purpose and scope of section 26; and no further definition is needed of the meaning of the first clause of this section: "Judges shall not charge juries in respect to matters of fact." A judge violates this provision when he expresses in his charge his own opinion upon the force and effect of the testimony or of any part of it, or intimates his views of the sufficiency or insufficiency of the evidence, in whole or in part. Examples of what has been held to be charging on the facts will be found in: *State* v. *Green*, 5 S. C., 65; *State* v. *White*, 15 S. C., 391–2; *Benedict* v. *Rose*, 16 S. C., 630; *Howard* v. *Wofford*, 16 S. C., 155; *Sharp* v. *Kinsman*, 18 S. C., 114; *State* v. *Jenkins*, 21 S. C., 595; *Levi* v. *Legg & Bell*, 23 S. C., 285; *State* v. *Small*, 24 S. C., 591; *State* v. *Addy*, 28 S. C., 14; *State* v. *Norton*, 28 S. C., 578–80; *White* v. *Railroad Co.*, 30 S. C., 228; *State* v. *Caddon*, 30 S. C., 609; *State* v. *Williams*, 31 S. C., 258; *State* v. *Wyse*, 32 S. C., 54–5; *Jackson* v. *Jackson*, 32 S. C., 591–2; *State* v. *Brown*, 33 S. C., 160; *Brock* v. *O'Dell*, 44 S. C., 29. Instances of charges which were held not to be charges on the facts will be found in: *State* v. *Atterberry*, 19 S. C., 597; *Acker* v. *Co. of Anderson*, 20 S. C., 499; *State* v. *Robinson*, 27 S. C., 619; *Carroll* v. *Express Co.*, 37 S. C., 455; *State* v. *Atkinson*, 40 S. C., 373.

With reference to the second part of section 26, "but may

state the testimony and declare the law," this Court has several times confessed that "there is no more difficult duty imposed upon this Court than that of fixing, under this provision, the exact line which bounds the province of the trial Judge in respect to matters of fact. * * * The Judge undoubtedly has the right to state the testimony, and in its proper order, and it is easy to see how a conscientious officer * * * may unconsciously transcend the very shadowy outlines of his constitutional domain." *State* v. *Addy*, 28 S. C., 13; see, also, *State* v. *Summers*, 19 S. C., 94. Since this permission to "state the testimony" has been taken away, and no longer is found in section 26 of the Constitution, it is of the utmost importance that we should ascertain what this Court has held to be the true and full meaning of the expression, "may state the testimony," because, by the elision of that clause, Circuit Judges have been deprived of whatever power it conferred. In *Redding* v. *Railroad Co.*, 5 S. C., 69, it was thus defined: "Stating the evidence means more than repeating it. It includes the idea of placing it in its logical relation to the propositions which it is adduced to support or contradict, as well as to the principles and rules of law by which its bearing and force ought to be controlled." (Willard, A. J.) It was held, somewhat more at length, in *State* v. *Green*, 5 S. C., 66, "that a Judge, in his charge to the jury, is not to be confined to a mere narration of the evidence. While he is not at liberty to give his conclusion on any particular portion of the testimony, nor the result of his judgment as to the whole, he is not restrained from comparing the various parts of it, that the jury may have before them, in as concise a form as possible, the issues upon which they are to pass, so that they may be the better enabled to apply the law to the facts presented in the cause. The Judge is not permitted to say, where the testimony makes an issue of fact, in what manner the jury is to value it; but he may review the whole testimony, and while not allowed to give his own conclusion, may collect and group together the various phases in which the

evidence may be regarded, that the jury may view it in the various relations which it bears to the law as pronounced by the Court." (Moses, C. J.) The quotation from Mr. Chief Justice Moses puts, perhaps, a too liberal construction upon "stating the testimony," approaching somewhat too closely the "summing up" of the common law. This seems to be intimated by Mr. Justice McIver, in *State* v. *White*, 15 S. C., 392. In that case, the present Chief Justice thus interpreted the clause: "While, therefore, the Judge is not expected to confine himself to a mere statement or repetition of the testimony as it was delivered, but may place it before the jury in the order in which it relates to the propositions which it is adduced to support or contradict, by pointing out the questions of fact which arise, and calling the attention of the jury to the evidence applicable to such questions; yet he should carefully avoid expressing any opinion which he may have formed from the facts, leaving it for the jury to draw their own conclusions, unbiased by any impressions which the testimony may have made upon the mind of the Judge." Mr. Justice McGowan expresses the same opinion, in *Benedict* v. *Rose*, 16 S. C., 630. After saying, "It has been properly held that 'stating the testimony' means more than repeating it," he adds: "But while it means more than merely repeating the testimony, the other part of the provision negatives the right to invade the proper province of the jury, by expressly declaring that 'Judges shall not charge juries in respect to matters of fact.' " Mr. Chief Justice Simpson, delivering the opinion of the Court in *Woody*, v. *Dean*, 24 S. C., 505, said very forcibly: "What is meant by the constitutional inhibition upon a Judge in charging on the facts, as we understand it, is that as to any disputed matter of fact in issue between the parties, while he may state the evidence, read it over to the jury, or state it orally, yet he is not permitted to give his opinion as to its force and effect, or make remarks intended, or tending, to influence the jury as to their finding. He may state the case alternatively—as, if they find thus and so

from the testimony, which he has recounted to them, the law will be one way; if not, it will be otherwise. The point is, that the Judge shall not take the testimony from the jury, either directly or impliedly, as to its effect." To the same effect is the language of the present Chief Justice, in *State* v. *James*, 31 S. C., 235: "What, then, is the extent of the permission to state the testimony? Is it confined to a mere repetition of the testimony, as it fell from the lips of the witnesses, or does it extend to an arrangement of the testimony in the order in which it applies to the several questions of fact arising in the case, and, as thus arranged, laid before the jury by the Judge?" After referring to several decided cases, Mr. Justice McIver continues: "The latter construction has been held the correct one; but it has been uniformly held that in thus laying the testimony before the jury in its proper order, the Judge must be careful to avoid expressing, or even intimating, any opinion as to the facts; and that if he does so, whether intentionally or unintentionally, a new trial must be granted. Under our Constitution, the jury are the exclusive judges of the facts, and the true meaning and real object of the section of the Constitution above quoted is that they must be left to form their own judgment, unbiased by any expressions or even intimations of opinion from the Judge." See, also, for similar doctrine, *State* v. *Jones*, 21 S. C., 596; *State* v. *Davis*, 27 S. C., 612; *State* v. *Addy*, 28 S. C., 13, 14, 15; *State* v. *Howell*, 28 S. C., 254–5; *State* v. *Howard*, 32 S. C., 95–7; *Foggette* v. *Gaffney*, 33 S. C., 311; *Moore* v. *Railroad Co.*, 38 S. C., 30–3. These authorities clearly show that under the constitutional provision to "state the testimony," a Judge had the right to repeat the testimony to the jury in his charge, either by reading it from notes or by stating it orally, or to arrange it in its proper or logical order, grouping it with reference to the several issues of fact arising and propositions of law involved, and to call the jury's attention to the evidence applicable to the questions of law or fact.

This right has been taken away from the Circuit Judges by the change made in section 26 in the Constitution of 1895, the permission to "state the testimony" having been left out, and, we must hold, intentionally left out. It was manifestly the intention of the framers of the Constitution of 1895 to deprive Judges of the right to "state the testimony" in charging juries, and to take from them all the power which that phrase has been held to imply. Section 26, as it now stands, thus further abridges the right and limits the power of Judges in charging juries which they formerly exercised under the common law, and which, as we have seen, had already been abridged and limited by the same section in the Constitution of 1868. Having thus ascertained what has been taken from the Judges in this regard, it remains to determine what has been left to them; to define, if possible, the limits of their diminished constitutional domain.

It stands to reason that nothing has been taken from them, with regard to the testimony, except the right "to state the testimony" in their charges. Thus it would still be competent for the Judge to tell the jury in his charge, in a proper case, that there was no evidence bearing on a certain issue, if there was none. This Court has held that such a ruling is strictly a matter of law, and not in conflict with the constitutional section in question. See *Redding* v. *Railroad Co.*, 5 S. C., 70; *Williams, Black & Co.* v. *Connor*, 14 S. C., 621; *Lynn* v. *Thomson*, 17 S. C., 137; *State* v. *Summers*, 19 S. C., 94; *State* v. *Nance*, 25 S. C., 172–3; *State* v. *Norton*, 28 S. C., 579. On the other hand, it would still be error to charge there was no proof, if there was any evidence at all on the point. *Fripp* v. *Williams, Bernie & Co.*, 14 S. C., 510; *Carrier* v. *Hague*, 9 S. C., 457. It would seem, also, that a Judge would not be violating the constitutional inhibition if he, in his charge, repeated the testimony as to undisputed facts or admitted facts, or stated their legal effect, or pointed out the different conclusions which might be drawn from them, or the inquiries they would

naturally give rise to. In *Woody* v. *Dean*, 24 S. C., 505, it was laid down that the constitutional inhibition upon a Judge, in charging on the facts, related only to "any disputed matter of fact in issue between the parties." Quoting this, in *Greene* v. *Duncan*, 37 S. C., 253, Mr. Justice Pope says: "Here is a judicial construction of this provision of the Constitution, and by its express terms such inhibition extends only 'to any disputed matter of fact in issue between the parties.' " *Held*, no error in the Judge charging testimony to which there was no opposing testimony. So, in *Moore* v. *Railroad Co.*, 38 S. C., 31, this Court said, by Mr. Justice Pope: "These acts of the plaintiff were admitted by him in his testimony. Every other witness testified to them. Where was there any issue between these parties as to those matters of fact? There was none. This being so, where did the Circuit Judge err in referring to them as unlawful? The facts being admitted, the Judge had the right to state the legal effect of such admitted facts; they were unlawful, and hence no error was committed by the Judge in this particular." It was held, also, in *Lynn* v. *Thomson*, 17 S. C., 137 (Mr. Chief Justice Simpson), that where there is no dispute as to the immediate fact testified to, and the question is as to the effect of such fact, it would not be an invasion of the province of the jury for the Judge "to point out to them the different conclusions which may be drawn, and the circumstances which might incline them to believe the one or the other, reserving his own opinions." In *State* v. *Glover*, 27 S. C., 607 (Mr. Justice McIver), it was held to be no error in the Judge to embody in his charge repetitions of the uncontradicted testimony of the witnesses, and "point out the inquiries which such testimony would naturally give rise to." See, also, *Ebaugh* v. *Mullinax*, 34 S. C., 373; *State* v. *Jackson*, 36 S. C., 491; *State* v. *Murrell*, 33 S. C., 98; *State* v. *Ezzard*, 40 S. C., 322. It would seem, also, that there is no violation of the constitutional inhibition when a Judge in his charge makes general remarks which have no special application to the

case; or which are not pertinent to any issue involved; or inadvertent, irrelevant remarks; or statements used in illustration of some principle of law. *Sullivan* v. *Blythe*, 14 S. C., 622; *State* v. *Sims*, 16 S. C., 486; *State* v. *Corbin*, 16 S. C., 545; *Moore* v. *Railroad Co.*, 38 S. C., 31; *Fitzsimons* v. *Guanahani Co.*, 16 S. C., 197; *Rembert* v. *Railroad Co.*, 31 S. C., 312. It has also been decided by this Court in several cases that a Judge does not violate the provisions of section 26 when he makes incidental remarks or observations, during the progress of a trial, not in his charge to the jury; but, for example, when making a ruling, or when hearing argument, or during the examination of the witnesses. In *State* v. *Turner*, 36 S. C., 544, referring to a remark made—not in charging the jury, but in making a ruling during the progress of the trial—Mr. Justice McGowan said: "It seems to us that it would be a great stretch of construction to hold that such an incidental remark, made during the progress of the case, amounted to a violation of the provision of the Constitution which prohibits Judges from charging juries as to matters of fact." To the same effect is *Ober* v. *Blalock*, 40 S. C., 37, in which the remarks objected to were made "in hearing argument and making rulings as to the admissibility of evidence." See, also, *State* v. *Crawford*, 39 S. C., 350, quoting, with approval, from *State* v. *Turner, supra;* also, *State* v. *Atkinson*, 33 S. C., 108, and *Moore* v. *Railroad Co.*, 38 S. C., 31, which last case holds that the violation "must be by charge."

It has also been well settled by the decisions of this Court, that art. IV., sec. 26, was not violated when a Judge, in his charge to the jury, based his declaration of the law upon a hypothetical statement of facts. By so doing he was neither charging in respect to matters of fact, nor commenting on the testimony, nor stating the testimony. In *Carroll* v. *Express Co.*, 37 S. C., 455 (Mr. Justice Pope), the Court said: "The Circuit Judge refused to make this charge"—a request to charge—"because he would thereby express his

opinion on the facts of the case. If such were the case, the Judge was right; but the appellant insists that such is not the case—that the request to charge was predicated upon hypothetical findings of fact by the jury; and if this were so, the Judge would have been in error—for it is very often the case that this is the only mode by which a party litigant can obtain a declaration of what the law is in a particular case from the presiding Judge." The request to charge, on page 453, was framed thus: "If the jury are satisfied from the evidence adduced that the plaintiffs, by their agent, Horton, induced the defendants' agent, Colyer," to do so and so, several matters being thus hypothetically stated, "then Horton must be held to have assumed all risk," etc., and, in short, to have made Colyer his agent—the purpose of the request manifestly being to obtain from the Judge instruction for the jury on the law of agency. The Court held (page 457) that the request "was intended to bring out a declaration of this principle of law by him, and such refusal of the Circuit Judge was error." Without such a hypothetical basis, since he may not now state the testimony, it is difficult to see how a Judge could make plain to the most intelligent jury the law of agency, of negligence, laches, estoppel or the like subjects, in which, necessarily, law and fact are so intimately blended. See, also, Mr. Chief Justice McIver's opinion, in *State* v. *Milling*, 35 S. C., 26; and Mr. Justice Pope's, in *Greene* v. *Duncan*, 37 S. C., 254; and in *Brock* v. *O'Dell*, 44 S. C., 29, where it was held: "If the plaintiffs had desired a charge from the trial Judge upon a hypothetical state of facts, they should have so framed their request." A similar charge was sustained in *Bank* v. *Zorn*, 14 S. C., 453. And in *Woody* v. *Dean*, 24 S. C., 505, Mr. Chief Justice Simpson said: "He may state the case alternatively—as, if they find thus and so from the testimony, * * * the law will be one way; if not, it will be otherwise." From these authorities we conclude, therefore, that it would be no violation of section 26 in its new form to submit to the jury in the charge a hypothetical statement of facts on

which to base the law, in many cases a necessary basis of the law which the Judge announces.

We must not overlook the important fact that, in addition to taking away the right to "state the testimony," the new section 26 has changed the permission, "may * * * declare the law," into the mandate, "shall declare the law." Since the Constitution now requires the trial Judge to declare the law, the question arises, what law shall he declare? In a homicide case, for example, shall he give the jury a complete discourse on the law of murder, manslaughter, homicide *se defendendo*, homicide *per infortuniam*, &c.; or, in a case of trespass to try title, shall he endeavor to aid the jury by an exhaustive survey of the whole realm of the law of real estate? To ask the question is to answer it. Such a charge would leave the law of the particular case *in nubibus*. Clearly the Judge can be required to declare only so much of the law as is applicable to the case on trial; and what that law shall be, can be shown by the testimony alone. As was well said by Mr. Justice McGowan, in *Benedict* v. *Rose*, 16 S. C., 630: "The Judge is required to announce the law, but that cannot be done properly until the facts are established. He cannot be expected in every case to announce all the law, but only so much of it as is applicable to the case made by the facts. It is, therefore, absolutely necessary for him, in discharging his part of the duty, not only to understand, but to make reference to the facts, which must constitute the basis of the law he announces. Accordingly, the Constitution declares that he has the right to state the testimony and declare the law." That right has been taken away by the amendment to section 26, as we have seen; but it is as "absolutely necessary" as ever, that the Judge should have something to constitute the basis of the law he declares, more necessary, if possible, now that he *must* declare the law. He can no longer bottom his law upon direct references to the testimony, but he may bottom it upon a supposed state of facts. Mr. Chief Justice Simpson was equally strong in delivering the opinion of

34—47

this Court, in *Woody* v. *Dean,* 24 S. C., 504: "While a Judge has no right under the Constitution to charge on the facts to the extent of giving his opinion to the jury, he must necessarily say something about the testimony, or else his charge would be barren of fruit, and in many cases a useless ceremony." He may not now say anything directly about the testimony, may not state what is in evidence, but he may prevent his charge from being a useless ceremony, by founding it upon a hypothetical statement of fact. This view is not inconsistent with that expressed in *State* v. *James,* 31 S. C., 235, in which the present Chief Justice spoke for the Court, and said: "The first inquiry which naturally arises is, what is the meaning and extent of the prohibition, Judges shall not charge juries in respect to matters of fact? If that language stood alone, then the inference would be that a Judge, in charging a jury, should not say anything about the facts; for the broad terms used—'in respect to matters of fact'—would certainly warrant, if they did not require, the inference, that a Judge was not at liberty even to speak of the facts; not at liberty to speak in reference to, or 'in respect to,' them. But as that was not the intention, additional words are found in the clause, which expressly permit the Judge to state the testimony. So that the practical inquiry is, what is the extent of this permission, following as it does and qualifying, the previous absolute prohibition, which, without such qualification, would forbid any allusion to the testimony." The condition thus argumentatively supposed, now exists. The prohibition, "Judges shall not charge juries in respect to matters of fact," now stands alone in section 26, unqualified by the permission to "state the testimony," which permission has been stricken out by amendment. And any direct reference to the testimony in charging a jury, any expression as to what is in evidence, any remark that would amount to a stating of the testimony, in whole or in part, is absolutely prohibited.

At the same time, we cannot presume that it was the intention of the framers of the new Constitution (many of

whom were members of the bar, and learned in the law, and familiar with the decisions of this Court,) to require trial Judges in their charges to declare the law, and yet forbid them to base that law upon any foundation, by which alone they can make it apply to a given case. The constitutional mandate is, they "shall declare the law." To require that they shall do so, and to forbid them to establish the law they must declare upon any foundation, is to require the impossible. We have shown by the highest authority that such a foundation is absolutely necessary. Formerly it was furnished either by a statement of actual facts in evidence or by a statement of hypothetical facts; now it must be found solely in the latter—a supposed state of facts.

We, therefore, conclude and hold that, as it would be impossible to declare the law applicable to a case on trial without connecting the legal principles involved with some state of facts, actual or hypothetical, it was the intention of the framers of the new Constitution, in amending sec. 26, art. IV., that the trial Judge in charging the law of the case should lay before the jury that law as applicable to a supposed state of facts; but that in so doing he should carefully avoid repeating the evidence on the facts at issue, making no statement of the testimony, either in whole or in part. We are clearly of the opinion that under section 26, as it now reads, a Judge may, in declaring the law applicable to the case, base that law upon hypothetical findings of fact by the jury, and instruct the jury that, if they believe so and so from the evidence they have heard, then such and such will be the legal result. In so doing, if he be careful not to repeat any of the testimony, nor to intimate, directly or indirectly, what is in evidence, he will be chargeable neither with stating the testimony nor with charging in respect to matters of fact. The length to which our discussion of this question has grown will be excused, we trust, in consideration of the great importance of the subject, and the obvious necessity of determining, as clearly

and satisfactorily as possible, the full effect of the change in sec. 26, art. IV.

We recur now to the charge of the Judge in the case at bar, excepted to by the appellants as in violation of section 26. It appears that he said to the jury: "So far as T. L. Clinkscales is concerned, he assigned this mortgage to Mrs. Estelle Clinkscales for value, as he says, and he is now in possession of this property, or a part of it; and, even if there was no proof as to what was due, T. L. Clinkscales would be estopped; for, you observe, T. L. Clinkscales put Mrs. Estelle Clinkscales in a position she would not have occupied but for the position he put her in. If this is so," * * * "Did he undertake, for instance, to give her corn which had already been consumed? She can't be said to elect between that corn and this property, because the corn was not there to take." These remarks of the Judge were not uttered while he was making a ruling during the progress of the trial, nor were they mere incidental remarks or observations let fall during the progress of the case; but they were made in his charge to the jury. Nor did they relate to undisputed or admitted facts, but to facts in issue between the parties, and to be determined by the jury. Nor was the Judge submitting hypothetical findings of fact as a foundation for the law of the case; but his references to the testimony were direct, positive, and categorical. It is true, that one of the statements was followed by the phrase, "if this is so;" but the Judge had already stated what the testimony was, and had given his opinion of its effect; and we must think that the qualifying phrase came too late to cure the mischief and do away with the effect of the positive expression. (*State* v. *White*, 15 S. C., 393; *State* v. *Smalls*, 24 S. C., 591–2.) The portions of the charge under consideration amount to a "stating of the testimony" in part; and we have seen that the right "to state the testimony" has been taken from the trial Judge. They also embody an expression of the Judge's opinion concerning the effect of the testimony referred to; and such

we hold to₀ be an instance of charging "in respect to mat-
ters of fact;" a violation, therefore, of the strict prohibition
of the Constitution.

The sixth and eighth exceptions of the appellants are,
therefore, sustained.

It is the judgment of this Court, that the judgment of
the Circuit Court be reversed, and a new trial granted.

MR. JUSTICE JONES concurs in the result.