STATE v. HOWELL.

The trial judge having plainly intimated his opinion upon the facts of the case and as to the guilt of the defendant, the defendant, on appeal from a sentence after verdict against him, was granted a new trial.

Before PRESSLEY, J., Lexington, September, 1886.

The appellant, a police officer of Peak's, a village in Lexington County, together with one John Hipp, were indicted for aggravated assault and battery upon the person of A. M. Wal-

lace, the prosecutor. The defendants offered no testimony. The charge of the presiding judge was as follows:

Gentlemen, the facts of this case are, as it were, in a "nutshell." You are not at liberty to guess anything; you are not at liberty to imagine anything; you are not at liberty to suppose anything that witnesses who are not here would have testified to. You, I, and all of us are confined to such facts as are testified before us on oath by the witnesses. This is the simple law of the matter. That is what is meant when it is said we are to try a case according to the law and evidence. It means evidence testified by witnesses on oath before a jury.

The first simple question which you are to decide is, did the defendant, Howell, and the other defendant, Hipp, being there and acting with him, did he strike Mr. Wallace over the head with a club? Gentlemen, you have heard the testimony. If you have any reasonable doubt about it, you must give the defendant the benefit of that doubt. But is it a fact or not? Four witnesses have testified to it. Has there been any attempt to impeach their veracity by putting witnesses on the stand, that they are not to be believed upon their oaths? Is there any evidence that they did not know what they were testifying to? that they were so drunk that they did not know what occurred? If they had been drunken men, could they possibly have testified as they did upon the stand, differing so little as to the testimony and as to the details? Is there anything in the case to warrant you in believing their testimony? If you don't believe it, as a matter of course you are bound to say the defendant is not guilty.

If you do believe it, what then? The next question is, is that a deadly weapon? Witnesses say it was an ordinary police club, and they have described what an ordinary police club is, as a heavy short club, 18 inches long, made for police purposes; made to be used by policemen in time of riot, or when they are assaulted or arrest is resisted by men violating the law. Is it a deadly weapon? One of the witnesses testified he could kill a man with it, and he says he is nothing like as strong as the man who used it. A deadly weapon is one calculated to kill when wielded by the arm by the person who has it in his hand. A weapon wielded by a weakly man might not be considered a

deadly weapon in his hand.  A deadly weapon is one calculated to kill if wielded by the arm of the person who used it.  Is this weapon, which the witnesses say Mr. Howell used, in that sense of the word, was it a deadly weapon?  It does not mean, did it kill?  It does not mean, would it have killed if struck on the top of the head, the thickest part of the skull, but is it calculated to kill even if struck an unlucky blow?  if it struck him on the temple, eye, or any part of the skull that would be most easily fractured?  If it would be calculated to kill from his arm struck in that way, the law says it is a deadly weapon.

If, after weighing the testimony, you are satisfied, from the testimony, that he struck that blow, and the weapon was a deadly weapon, then he is guilty unless he has proved—not suggested, not guessed—that he was justified in doing it.  Where is that proof that he was justified in doing it?  Is there any proof that these men were behaving riotously in the street, and refused to cease their rioting after he told them to stop?  Is there any proof that they were making any fuss whatever at the time he struck that blow?  There is proof that previous to that time Mr. Wallace had used an oath in the street in speaking to Mr. Fulmer. He had a right to tell him to stop swearing; he had a right to say, "If you don't stop, I will take you to the guard house." If Mr. Wallace stopped and then went off the street, he had no right to arrest him for that offence, if the offence committed be passed and the party be not arrested at the time; if he quietly submitted to the order of the police to cease and goes away, he cannot be arrested except by a legal warrant by one who has the right to execute the warrant.  I know that it is absolutely necessary that police authority shall be enforced; it is necessary for the peace of every man, woman, and child who goes to these villages; and it is absolutely necessary that the police shall be prevented from infringing on the rights of citizens and using violence.  The one is as necessary as the other.

This is a day of lynching, of pistols and knives, and there are many persons who very wrongly consider when a thing of this sort has been done that they are entitled to shoot the man as soon as they can find him.  There are a good many hot-headed people who think so.  There are other people who will gather their

friends and lynch a man for this thing done unlawfully.  Once a
man was lynched in Spartanburg by a mob, and, as I supposed,
without sufficient evidence of his guilt, and brought the matter to
the attention of the grand jury.  They say that an appeal to the
law in a case of that sort is so uncertain a matter that the only
remedy left the community was to lynch the party.  I have for
years been warning the people of the State about this dangerous
thing of lynching.  I have told them over and over again that
they will see the day they will regret it; that at some time or
another some innocent young man will be charged with an offence
of this sort, and will be hung.  Lately, in Macon, Ga., a police-
man was hung in spite of his protestations that he was innocent.
He was hung, charged with raping an innocent girl.  It turned
out after he was hung that she was known in the place she came
from to be one of the most notorious bawds that lived in the
neighborhood; that she was common even to the lowest class of
people.  That was one of the results from lynch law.  The only
way that we can ever put down lynch law, or prevent persons
from using pistols and knives upon those from whom they receive
injury, is, when there is a plain case, when appealed to the law,
that the law shall be enforced in a right and proper way, and
that the party who has violated the law be punished.  The mo-
ment people find out that the law will be properly enforced, and
persons who commit outrages punished, the desire to lynch and
take the laws in one's own hands will cease.

Now, gentlemen, you are to weigh this matter.  Are you,
first, satisfied that this man struck that blow upon the head, and
are you satisfied that it was done with a deadly weapon?  If it
was done with a deadly weapon, then it is assault with intent to
kill, unless he has proved he was justified in doing it.  Unless
you can lay your finger on any evidence to prove justification,
he is guilty of assault with intent to kill.  If not guilty on the
first count, then he is guilty on the second count of aggravated
assault and battery.  If you can find any testimony that he was
justified by his act by anything in proof before you, of course
you will acquit him.  It is suggested to you that you may disbe-
lieve these witnesses, first, because they did not know what they
were talking about, and, secondly, because they were telling a

romantic story ; in other words, they were doing this thing for nothing. I do not so understand Mr. Wallace. I understand that he knew before that Mr. Howell was offended, and he knew beforehand that Mr. Howell made threats against him in consequence of his intervention in behalf of a colored man who was charged with having committed an offence, and that when Mr. Howell spoke to him that morning he connected the two things together, particularly from Mr. Howell's tone and manner at the time he ordered him to stop ; that he saw at the time that Mr. Howell intended to watch for an opportunity to punish him for the former matter, he was therefore careful to mind what he said and get out of his way. That is what he says. If that be the case, then there is no romance about the story, and there is nothing unreasonable about it.

If you come to the conclusion that this party did strike with a deadly weapon, and he has not proven he was justified in doing it, you will find him guilty generally. If you find it was not a deadly weapon, then you can only find him guilty on the second count of aggravated assault and battery. If you find anything in the testimony that gives you a reasonable doubt about the matter, of course you are bound to say not guilty.

Howell was convicted and Hipp acquitted. The exceptions alleged error to the presiding judge in charging upon the facts.

*Messrs. Johnstone & Cromer*, for appellant.

*Mr. Nelson*, solicitor, contra.

March 20, 1888. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The question upon which this appeal turns is, whether his honor, the Circuit Judge, transcended in his charge the constitutional limit prescribed in art. IV., section 26, of the Constitution, which provides : "That judges shall not charge juries in respect to matters of fact, but *may state the testimony* and *declare the law.*" We have construed this section to mean (*State* v. *Jenkins*, 21 *S. C.*, 595; *Woody* v. *Dean*, 24 *S. C.*, 503), that while trial judges may state the testimony and so arrange it as to enable the jury to apply it to

the legal points involved, yet that they cannot convey to the jury, either expressly or impliedly, their opinion as to the force and effect of said testimony upon any question of fact at issue between the parties.   In other words, that the jury must be left perfectly free in reaching a conclusion upon the testimony introduced, untrammelled by any intimation from the judge as to whether a certain fact at issue has been proved or not.   Whether this is a wise provision or not, and whether it best subserves the interests of the country in the administration of justice or not, is not a question to be considered by the courts.   It is in the constitution, the organic law of the government, and it cannot be disregarded.

In this case the three questions of fact at issue were (as stated by his honor in his charge), 1st.  Did the defendant, Howell, and the other defendant, Hipp, being there and acting with him, strike Mr. Wallace over the head with a club ?   2d. Was the club a deadly weapon ?   And 3d. Was there any evidence of justification ?   The entire charge is in the "Case," and should be reported.   Without specifying particularly the portions of the charge in which we think his honor transcended the constitutional boundary, we think it is sufficient to say, that upon the first contested fact mentioned, and also upon the third, his honor pretty clearly intimated his opinion· in the earnestness of the charge, that the defendants struck the blow complained of, and that they had no cause for the violence used ; and, further, that Wallace's explanation of his conduct was worthy of belief, and should control.   Under these circumstances we think that the defendants are entitled to a new trial.   And to this end,

It is the judgment of this court, that the judgment of the Circuit Court be reversed.