## 7501

### STATE v. JOHNSON.

1. EVIDENCE—RAPE.—It was relevant and competent in an indictment
   for rape to show that about twenty men beside defendant had been
   brought to the victim for identification and she failed to identify
   either of them as her assailant.

2. CHARGE—RAPE.—Instructing jury in case of rape to the effect that
   they need not bother themselves about the *corpus delicti,* that there
   has been no serious controversy about it, but it must be proved
   beyond a reasonable doubt, the crime being denied, is a charge on
   the facts, and saying, "suppose she says I saw the man and recog-
   nized him. I saw him with my eyes and felt him with my hands
   and he is so and so, and she insists upon it," goes too far in stating
   and emphasizing the testimony of the prosecutrix. That a party
   denying a fact offers no evidence against it does not make the fact
   an admitted or an undisputed fact.

Before GAGE, J., Darlington, February, 1909.  Reversed.

Indictment against Robert Johnson for rape.  From sen-
tence, defendant appeals.

*Messrs. Geo. E. Dargan* and *Geo. H. Edwards,* for appel-
lant.

*Solicitor J. Monroe Spears* and *Mr. P. H. Nelson,* for
appellant.  *Mr. Nelson* cites: *That the prosecutrix failed*

*to identify others is competent:* 47 S. C., 67; 12 Cyc., 392,
430; 22 N. W., 15. *Admission of irrelevant testimony is
harmless:* 38 S. C., 381; 28 S. C., 121; 47 S. C., 73.
*Especially when other evidence on same point has been
received without objection:* 72 S. C., 426; 75 S. C., 264;
76 S. C., 284; 78 S. C., 38, 155; 21 Fla., 242. *Nor if
incompetent evidence does not affect the result:* 32 Fed R.,
569; 58 Ga., 545; 33 Miss., 47. *Proof of corpus delicti
was submitted to jury:* 47 S. C., 74. *Hypothetical state-
ment of facts is permissible:* 65 S. C., 449; 49 S. C., 294;
47 S. C., 521; 58 S. C., 380.

March 17, 1910. The opinion of the Court was deliv-
ered by

MR. JUSTICE HYDRICK. The defendant appeals from
sentence of death for rape. On his arraignment he pleaded
not guilty, and undertook to prove an alibi.

To a proper understanding of the points decided, it will
be necessary to state the substance of the testimony of the
prosecutrix as to the outrage, and a few of the material
facts appearing in the testimony. On the night of the out-
rage the prosecutrix retired about seven o'clock, leaving a
lamp burning low on the bureau in her room, and the front
door unlocked, as she usually did, until her husband came in.
She was alone, except her little son, five years old was in
bed with her. After she had been in bed some time, she
saw a negro man near the bureau. He turned and took a
step or two, and blew out the light. In doing so she got a
tolerably good look at him. He then went around the foot
of the bed to where she was lying, and, telling her that he
would kill her if she hallooed, he took her in his arms and
carried her into the back hall and ravished her. She put
up her hand and felt his face. It was rough, as if he had
a beard of about a week's growth. After he had accom-
plished his purpose he told her to go back to her little boy,
and if she hallooed he would come back and kill her. She

was too frightened to make any outcry. There were several houses near enough for her cries to have been heard by their occupants. She went back to bed, and heard the back door open and shut. Her husband came in about ten o'clock, and found her rolling on the bed in a very nervous and excited condition. She told him of the outrage. She did not see the defendant for about two months after the outrage—not until the night before the trial—when he and two other negroes were put in a vault in the sheriff's office with a lamp burning low, and she was carried to see if she could identify him. He was made to assume various attitudes, to put his hat on in different ways, and to blow out the light, presumably in the same posture in which the prosecutrix had described her assailant. He was also asked some questions as to who he was and where he had been. She positively identified him.

The first exception alleges error in admitting testimony that about twenty negroes were arrested and carried before the prosecutrix immediately after the outrage, and she failed to identify any of them. We think the testimony was competent, unless it was incompetent by reason of the fact that it necessarily involved the declaration of the prosecutrix. But that objection could have been easily obviated by simply proving the fact that these men were carried before her, and after she had seen them they were discharged. From which the inevitable inference would be that she had failed to identify them. Moreover, the prosecutrix herself testified to the fact, without any objection, which would be sufficient to render this exception unavailing.

It was also relevant. The fact that she failed to identify any one of the twenty who were carried before her, tended to prove that she had some recollection of the features and appearance of the guilty man, and that her mind was not in that state of doubt and uncertainty which might have caused her to identify as her assailant, the first person upon whom

suspicion rested, who had any resemblance to the guilty party. It also tended to show caution on her part. As to how far it went in that direction, or, in other words, what force and effect or weight should be given to it, was a matter solely for the jury.

If she had identified any one of those who were carried before her as the guilty party, and if it had afterwards turned out that she was mistaken, certainly it would have been competent for the defendant to prove that fact, because it would have tended to show uncertainty in her mind as to the appearance of the guilty party.

The other exceptions impute error in charging upon the facts. The following is the portion of the charge excepted to: "Gentlemen, you need not bother yourselves much about the *corpus delicti*, that is, about the commission of the offense. There has been no serious controversy about it, it must be proven to you beyond a reasonable doubt." And, again: "When a witness testifies that I saw with my eyes and heard with my ears, I saw a man raise the pistol and saw the flash of the gun and saw the man fall dead, that is direct testimony, and when it satisfies you of the truth beyond a reasonable doubt, that is final and conclusive, and this is a matter of gravest consideration in this case. Counsel on both sides recognize that, and it is for you to decide what weight you shall give it. It may or may not be true. For instance; Suppose a woman has been ravished, and suppose she says I saw him with my eyes and felt him with my hands, and he is so and so, and she insists upon it, and is willing to live and die by it, and suppose the sheriff proves that, on that night, he had that man under lock and key for stealing. What would be the conclusion?"

The defendant's plea of not guilty put in issue the *corpus delicti*. It was necessary for the State to prove beyond a reasonable doubt that the prosecutrix had been raped. When his Honor said to the jury, "You need not bother yourselves

much about the *corpus delicti,*" he gave them a very plain intimation, if not a positive expression of his opinion that the *corpus delicti* had been sufficiently proved.

While the second quotation from the charge above set out is less objectionable on that ground, because it is more doubtful whether it involves any intimation of his Honor's opinion, still we think it went too far in stating and emphasizing the testimony of the prosecutrix.

The provision of the Constitution which forbids judges from charging juries in respect to matters of fact has been so frequently construed and commented on that any extended discussion of the subject at this time would be unprofitable. We shall content ourselves, therefore, with quoting a few extracts from previous decisions of this Court, which we think show clearly the correctness of our conclusion in this case.

In *State* v. *White,* 15 S. C., 392, the Court said: "The real object of this clause of the Constitution is to leave the decision of all questions of fact to the jury exclusively, uninfluenced by any expression of the opinion by the Judge, whose position would very naturally add great weight to any opinion he might express upon any question of fact arising in a case."

In *State* v. *Howell,* 28 S. C., 225, 5 S. E., 617, the Court said: "The jury must be left perfectly free in reaching a conclusion upon the testimony introduced, untrammelled by any intimation from the Judge as to whether a certain fact at issue has been proved or not."

In *Norris* v. *Clinkscales,* 47 S. C., 513, 25 S. E., 797, the Court said: "A Judge violates this provision when he expresses in his charge his own opinion upon the force and effect of the testimony, or any part of it, or intimates his views of the sufficiency or insufficiency of the evidence in whole or in part."

In *China* v. *Sumter,* 51 S. C., 459, 29 S. E., 206, the Court says: "It must be remembered that the former pro-

vision upon this subject, in the Constitution of 1868, sec. 26, art. IV, allowed greater latitude to the judges than is now permitted; for *then* the Judge was allowed to 'state the testimony,' but *now* he is not allowed to do so. In construing this constitutional provision, as declared in the Constitution of 1868, it was said in the case of *State* v. *James,* 31 S. C., at page 235, 9 S. E., 844, that, in stating the testimony as then allowed, 'the Judge must be careful to avoid expressing, or even intimating, any opinion as to the facts, and that if he does so, whether intentionally or unintentionally, a new trial must be granted. Under our Constitution, the jury are the exclusive judges of the facts, and the true meaning and real object of the section of the Constitution above quoted is, that they must be left to form their own judgment, unbiased by any expressions, or even intimations of opinion by the Judge." Again, on page 461: "It is contended, however, that this error was obviated by the fact that the Circuit Judge in several other portions of his charge told the jury that all qeustions of fact were exclusively for them. But this view cannot be accepted; for if, as we have seen, the real object of this constitutional provision was to leave all questions to the jury to be decided according to their own judgment, unbiased by any expression or even intimation of opinion from the Judge, it is manifest that such object would be defeated, if a Circuit Judge should be allowed to express his own opinion upon any material question of fact, and then undertake to wipe out the impression made upon the minds of the jury by telling them that all questions of fact were for them. The impression having once been made, it would be very difficult if not impossible, thus to obliterate it, and the result would be that the jury would be more or less influenced by an opinion coming from so high a source as an intelligent Judge, whose mind had been trained to weigh testimony and determine its force and effect, and thus the very object of the constitutional provision, to preserve the minds of the jury

from being in any way influenced by the opinion of the Judge as to a question of fact, would be defeated."

This last quotation shows that the error of telling the jury, "You need not bother yourselves much about the *corpus deliciti,*" was not cured by his subsequently telling them, "It must be proved to you beyond a reasonable doubt."

Our conclusion in this case is not in conflict with those cases in which it has been held that a judge may, in charging the jury, state admitted facts, or facts as to which there is no issue, or declare the law applicable to a hypothetical state of facts.

But, because a party does not introduce evidence to disprove a fact which he denies, or to rebut the testimony introduced by the adverse party to prove the fact, it does not follow that it is an admitted or undisputed fact. It may and frequently does happen that a party has no possible way of rebutting the testimony of his adversary to prove a fact. Yet, his denial of the fact entitles him to have the jury pass upon the weight and sufficiency of the evidence offered by his adversary to prove it. Take the case at bar as an illustration; and, bearing in mind the oft quoted maxim of Lord Hale that the accusation of rape "is easily made, hard to be proved, and still harder to be defended by one ever so innocent," we can readily see the difficulties under which the defendant was placed as to the *corpus delicti.*

Where the defense is an *alibi,* as it was in this case, the defendant almost necessarily has to rely, at least to some extent, on the circumstances, as they may be developed in the evidence for the prosecution. In this case, circumstances were developed in the evidence for the State which are usually stressed in argument before a jury in such cases; as, for example, the fact that the prosecutrix made no outcry, though persons were near enough to have probably rescued her from the clutches of her assailant; the presence of a little boy five years of age in bed with her,

who was not aroused by her being taken from the bed; the fact that she made no outcry immediately after her assailant had left; the fact that no examination of her person was made by a physician immediately afterwards, though one was called within a very short time; the fact that no resistance seems to have been made; that no bruises or marks of violence were found upon the prosecutrix or the defendant; that her clothing was not torn; that the blood alleged to have been found on her garments was not examined before they were washed. See 3d Green. Ev., sec. 212.

We must not be understood as intimating any opinion whatever as to the weight or influence which the facts above enumerated, as they appear in the record now before the Court, should have in deciding the question. Their force and effect would probably depend in each case to a greater or less extent upon the other facts and circumstances appearing; as, for example, the comparative size and strength of the prosecutrix and the defendant, or, if the prosecutrix and defendant were of the same class, and the defense was that the act was done with consent, and other circumstances which will readily suggest themselves. They are mentioned here merely to show that there were circumstances in the case which might have afforded ground of argument to the jury on one of the vital issues in the case, and to show that it could not properly have been said that the *corpus delicti* was either an admitted or an undisputed fact.

Judgment reversed.