15003

HAYNES v. GRAHAM ET AL.

(6 S. E. (2d), 903)

May, 1939.

*Messrs. Perrin & Tinsley,* for appellants,

*Mr. L. G. Southard,* for respondent,

384

January 24, 1940.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This action was brought by plaintiff to recover damages for injuries which she alleges she sustained when she fell upon the floor of the store room of the appellants, in which she was employed as a saleswoman. The case was tried by Judge T. S. Sease and a jury.

While Dr. Hugh Black, a witness for plaintiff, was being cross examined by Mr. Perrin, of counsel for defendants, he was asked:

"Q. It was after you put the cast on her? A. No, sir; I called him and told him we were going to put her in a cast, and he referred me to the First Mutual Insurance Agency.

"The Court: Wait a minute. How did that come out?

"Mr. Perrin: I would like to move that the Court withdraw the case from the jury. That answer was unsolicited and it was not in answer to any question.

"The Court: It is not the fault of the lawyer representing the plaintiff; it is not your fault, and not my fault. It is the fault of the witness. Motion overruled."

Motion for directed verdict was also overruled.

The case went on, and the jury found for the plaintiff actual damages. Motion for new trial was overruled. Defendants appeal on grounds set forth in twenty-one exceptions; these are grouped in counsel's brief in the form of six questions. We do not find it necessary to consider them *seriatim*.

The first question is: "Did the Judge err in refusing the motion for a mistrial?"

One of the grounds of the motion for new trial was that Dr. Black, plaintiff's witness, had interjected the matter of insurance into the case. In the order of the presiding Judge overruling the motion, he said: "The record will show that the statement was not brought out by the plaintiff's attorney. Indeed, during his direct examination, Dr. Black did not mention the words 'insurance agent.' It was when he was on cross examination that the doctor volunteered the words, and they were not in response to the question Mr. Perrin had asked. * * *" The logical deduction from this utterance of the Court is that inasmuch as this inadmissible evidence was not adduced by any action on the part of plaintiff's attorney, he would not be justified in declaring a mistrial. We may say that it was not adduced by any action on the part of defendant's attorney; nevertheless, it was before the jury with all of its baleful effect. Since the utterance of this Court in the case of *Horsford v. Carolina Glass Co.,* 92 S. C., 236, 75 S. E., 533, 541, the injection into the trial of a case of any reference to the fact that the defendant is covered by indemnity insurance is, highly improper and inadmissible. If it appear by utterances of other opinions since that case, that it is now the tendency to lower the standard set by the *Horsford case,* that tendency should be halted. This Court stands by the *Horsford case.*

In the *Horsford case* that eminent jurist, Associate Justice C. A. Woods, later a member of the United States Circuit Court of Appeals, Fourth Circuit, said:

"But when testimony manifestly incompetent and prejudicial is adduced for the purpose of having such testimony influence the jury, the party who adduces it will not be allowed to hold his verdict and assert that the court can do nothing against the unfair advantage of having the statement before the jury, beyond striking it out and instructing the jury to disregard it. In such case it does not lie in the mouth of the offending party to say that, although he has brought in irrelevant and prejudicial testimony, the court cannot entirely deprive him of the benefit of it. It makes no difference that defendant's counsel did not move to strike out the testimony. Had the motion been made and granted, the plaintiff would still have had the unfair advantage of having testimony before the jury which he ought not to have offered. Justice can be satisfied only by the complete relief of a new trial. * * *

"The inevitable conclusion that a party should not be allowed to hold a verdict obtained under such circumstances is enforced and illustrated in many cases. With respect to testimony as to employer's insurance, the Supreme Court of Missippi said, in *Herrin v. Daly,* 80 Miss., 340, 31 So., 790, 92 Am. St. Rep., 605: 'It could not conceivably throw any light on the issue, and could have no other tendency than to seduce a verdict on the ground that an insurance company, and not the defendants, would be affected.' * * * *"

The respondent and the Circuit Judge hold that the case of *Vollington v. Southern Paving Const. Co.,* 166 S. C., 448, 165 S. E., 184, 186, is authority for the action of the Court in the instant case. The two cases depend, for a proper understanding, upon the facts in each case and the application of the law thereto. We have seen what occurred in the present case. In the *Vollington case* the defendant's counsel was examining in chief one of the defendants and asked a question, to which the defendant witness volunteered the

testimony which brought into the case evidence of the fact that the defendants were protected by insurance; to this plaintiff's counsel objected. It was in such circumstances that this Court said: " * * * Surely the plaintiff should not be penalized for that for which he was in no wise responsible." Continuing the quotation from the *Vollington case:* " * * * The presiding judge did all he could to repair the inadvertence of defendants' witness. Counsel agreed that the matter be struck from the record. If defendant's counsel felt that the matter was of such moment as to seriously and injuriously affect his clients' interest, he should have moved the court for a nonsuit, or for the ordering of a mistrial. Having failed to do either of these things, he must be held * * * to have waived his objections. * * * "

In the present case the objectionable reference to insurance was introduced by plaintiff's superserviceable witness— a most intelligent witness; one who, it is safe to say, because of his medical and surgical knowledge and practice, and his connection with a large hospital, and his frequent attendance upon Courts as a witness in damage suit cases, had some idea of the import of the evidence he volunteered. But be that as it may, the plaintiff got the benefit of this objectionable evidence offered by her own witness. Counsel promptly moved for the ordering of a mistrial. We can conceive of no more effective way of asking that the whole matter be struck from the record. It was error not to grant that motion.

We find no merit in the exceptions which charge error to the presiding Judge for refusing defendants' motion for a directed verdict in the matter of punitive damages. The Court said, when the motion was made: "I am going to submit both questions to the jury. If I don't like the punitive damages, I will cut it off."

We are not much in sympathy with this manner of treating such a motion; we think the movant is entitled to have his motion acted upon before the case goes to the jury. However, in this case the question has be-

come an academic one, since the jury found only actual damages. This Court has repeatedly held that in such case there is no ground for appeal.

Appellants' twelfth exception charges error in that the Circuit Judge participated in the examination of the plaintiff while she was a witness. The record shows the following occurrence when the plaintiff was being cross examined with reference to the alleged depression in the floor:

"Q. How large was it? A. Large enough to get me hurt.

"Q. Was there anything to keep you from seeing it? A. Those tables were there.

"Q. Was there anything to keep you from seeing it? A. I wasn't looking for it; he was supposed to have it clear.

"Q. Did you see it? A. No, you know I didn't.

"The Court: Until you slipped? A. That is right."

No one who knows the able and experienced jurist who presided in this trial will entertain the remotest suggestion that he intentionally i n t e r j e c t e d his own view or thought into the case. It was plainly an inadvertence. Nevertheless, it was unfortunate that it was made. One who is familiar with the trial history of the Courts of this State will recall that before the War of 1860-65 the Judges could and did comment on the facts of a case. There grew up a strong sentiment against the practice, which culminated in a provision of the Constitution of 1868 which took from the Judges this privilege, and strictly inhibited it. It is true that the Constitution was the work of a Convention composed of people not native to the State, of renegade native whites and ignorant and illiterate colored people who had just been freed from slavery. But the Convention of 1895, composed of natives of the State, included in that instrument a similar provision in the following language: "Judges shall not charge juries in respect to matters of fact, but shall declare the law." Article 5, Section 26.

This is a provision of the Constitution or statutory law of a majority of the Federal States. Our Court has con-

strued it in the following language: "* * * This provision of the constitution has been construed in several cases by this court, and in *State v. White,* 15 S. C., 381, *, * * it is said 'that the real object of this clause of the constitution is to leave the decision of all questions of fact to the jury exclusively, uninfluenced by any expressions of o p i n i o n by the Judge. * * *'" *State v. Davis,* 27 S. C., 609, 4 S. E., 567, 568.

In the case of *Enlee v. Seaboard Air Line Ry.,* 110 S. C., 137, 96 S. E., 490, 492, the Court said: "* * * The purpose of the section of the Constitution is to prevent the trial Judge from *intimating to the jury* his opinion of the case what weight or credence should be given the evidence and participating *in any manner with the jury's finding of fact.* * * *" (Italics added.)

In an able and elaborate opinion by Circuit Judge W. C. Benet, Acting Associate Justice, in the case of *Norris v. Clinkscales,* 47 S. C., 488, 25 S. E., 797, 805, this subject is discussed and thoroughly analyzed. Quoting from many opinions of our Courts, he emphasized these expressions: "Mr. Justice McIver, in *State v. White,* 15 S. C. (381), 392, held that * * * 'The object of the constitutional provision is to preserve the jury from being *in any way* influenced by the Judge's opinion as to the facts.' It was concisely stated by Mr. Justice McGowan in *Wood v. Atlanta & C. Air Line Ry. Co.,* 19 S. C. (579), 581, that this provision of the constitution was 'intended to exclude the influence of the Judge in molding verdicts.' Mr. Chief Justice Simpson said in *State v. Howell,* 28 S. C. (250), 255, 5 S. E., 617 (620): 'We have construed this section to mean that while trial Judges may state the testimony, and so arrange it as to enable the jury to apply it to the legal points involved, yet that they cannot convey to the jury, *either expressly or impliedly,* their opinions as to the force of said testimony upon any question of fact at issue between the parties; in other words, that the jury must be left perfectly free in reaching a conclusion upon the testi-

mony introduced, *untrammeled by any intimation from the Judge as to whether a certain fact at issue has been proved or not.'* \* \* \*" (Italics added.)

The above opinion was construing the provision of the Constitution of 1868, which was as follows: "Judges shall not charge juries in respect to matters of fact, *but may state the testimony,* and declare the law." Article 4, § 26. The emphasized phrase is not in the provision of the Constitution of 1895, which reads: "Judges shall not charge juries in respect to matters of fact, but shall declare the law."

It is needless to cite other authorities. It is enough to say that it is the settled conclusion of this Court that the trial Judge may not intimate to the jury his opinion on any contested issue of fact in the case before him.

In the case before us a cardinal issue of fact is this: Was the depression in the floor, into which the plaintiff alleged she stepped and fell and thus injured her ankle, one which a person exercising ordinary care for her own safety could easily have seen? And, further, did plaintiff step into this alleged depression, or did she fall because of a weak ankle caused by a former accident? She was being pressed on cross examination to say whether she saw the alleged depression. Finally she said: "No, you know I didn't." It was then the Court asked: "Until you slipped?"

It seems to us that there was here an intimation of the opinion of the Court that there was a depression, that the plaintiff had slipped and that she saw the depression in the floor when she slipped and fell. Juries are quick to seize upon anything which falls from the bench, which indicates what the Judge thinks about it all. We think that this inadvertent remark by the Judge must have had its influence with the jury. The exception is sustained.

Exceptions 16, 17 and 18 relate to alleged errors of the Court in relation to the fact that the attorney for respondent read to the jury from a law book; that he presented the book to the foreman of the jury so that he could follow the attorney as he read, and this was

without the permission of the Court. This matter was one of the grounds of defendants' motion for new trial. In his Honor's order denying the motion for new trial, he said about this matter:

"In this connection, I had glanced over the requests to charge of the plaintiff, and when defendants' counsel called to my attention that plaintiff's counsel was reading from a book, I said:

" 'I presume that Mr. Southard is reading from the requests to charge.'

"And when he said that he was I allowed him to proceed, and it was with my consent and permission, having glanced at the requests to charge and the authorities submitted thereunder, I knew it would be charged by me. The only thing that Mr. Southard read was a sentence from the fifth paragraph of *Hopkins v. Southern Cotton Oil Co.*, 144 S. C. (395), 400 (142 S. E., 615), * * *. He did not state a single fact of that case. As it turned out Mr. Southard did not utter a single word in reading to the jury that was not charged by the Court. * * *"

It appears to the Court that the presiding Judge permitted plaintiff's counsel to continue with the reading from the law book because he was under the impression that he was reading from the requests to charge.

It is against the announced rule of this Court for an attorney to read to the jury from a law book. Indeed, he may not read to this Court from a law book. The Court does not approve of the action of counsel in this case, but it does not appear from the statement of the trial Judge that the appellants were injured thereby, and for that reason alone the exceptions thereabout are not sustained.

Inasmuch as the case must go back to the Circuit Court, we refrain from passing upon the other exceptions, which relate mainly to alleged errors in the charge.

The judgment is reversed and the case is remanded for new trial.

Messrs. Justices Carter, Baker and Fishburne concur.

Mr. Chief Justice Stabler did not participate in the decision of this case.