**Bruce K. VAUGHAN, Jr., Plaintiff,**

v.

**SOUTHERN BAKERIES COMPANY,**
**a corporation, Defendant.**

**Civ. A. No. 8456.**

United States District Court
D. South Carolina,
Charleston Division.

Nov. 10, 1965.

J. D. Parler, St. George, S. C., and Gedney M. Howe, Jr., Charleston, S. C., for plaintiff.

Charles H. Gibbs, Charleston, S. C., for defendant.

ROBERT W. HEMPHILL, District Judge.

Defendant moves for a new trial and judgment non obstante veredicto upon the jury's award of $69,420.00 to plaintiff in a personal injury action.

The first basis of defendant's motion is:

> that the only reasonable inference to be drawn from the evidence in the entire case was that the plaintiff himself was guilty of contributory negligence and even wilfulness by admittedly proceeding into a dangerous intersection without exercising any care or caution when he actually saw and knew that the defendant's truck was approaching from his left and was not stopping and the driver thereof looking in the opposite direction and that the plaintiff, notwithstanding, proceeded into the intersection after he knew the defendant's vehicle was or would momentarily be in a position of obvious peril and danger.

It is uncontradicted that both vehicles were traveling at very slow speeds at the time of impact because the intersection in question is marked with every imaginable warning device, with defendant having the additional "warning" of a large STOP sign. The evidence was that defendant's truck slowed-down considerably while approaching the STOP sign, but *did not stop.*

Defendant claims the only reasonable inference is that plaintiff was guilty of contributory negligence as a matter of law. His argument fails.

■ Plaintiff had the right, under all the circumstances, to proceed through the intersection where he had the right-of-way. It was apparent that defendant's driver was in a position to see the warning devices, that he was in fact slowing down to a negligible speed as he approached the intersection, and plaintiff could reasonably conclude that the mandate of the STOP sign would be obeyed.

As Judge Wyche recently pointed out in Kirkland v. United States, 241 F.Supp. 198, 200 (W.D.S.C.1965):

> [A] motorist on a preferred highway is entitled to assume that a vehicle approaching on a secondary highway will stop for the intersection, unless he has knowledge of the absence of the sign, *or he is otherwise put on notice that the vehicle on the intersecting street is not going to stop.* Eberhardt v. Forrester, 241 S.C. 399, 128 S.E.2d 687. (Emphasis in original.)

Judge Simons concluded similarly in Murphy v. Smith, 243 F.Supp. 1006, 1010 (E.D.S.C.1965).

As the South Carolina Supreme Court decided less than two months ago in Beverly v. Sarvis, S.C., 144 S.E.2d 220, 223:

> It is a well settled rule in this state that every traveler on the highway, in the absence of any circumstances which would reasonably put one on notice to the contrary, is entitled to assume, and to act upon the assumption, that others using it in common will observe the law and exercise reasonable care. Of course, this assumption, to which Sarvis was entitled, did not relieve or excuse him from exercising due care for his own safety, as well as that of others, but, in determining whether or not he was guilty of any failure to exercise such due care, his conduct

has to be judged in the light of the assumption to which he was entitled.

Giving the plaintiff the most favorable view of the evidence, to which he is entitled as a matter of law, he cannot be adjudged to have engaged in contributory negligence as a matter of law.

Defendant's grounds for the alternative new trial motion are:

(a) that the verdict was so excessive as to indicate that it was based on or the result of bias, passion, caprice or other considerations not founded on the evidence, including the existence of liability insurance protecting the defendant; and

(b) that the Trial Judge should have directed a mistrial when the defendant's driver injected into the case the existence of liability insurance protecting the defendant.

The subject of insurance will be considered first. "Insurance" was mentioned during the trial by the driver of defendant's truck. Neither "liability insurance," nor the identity of the insurance company was explored or made clear. On cross examination, the driver was asked:

Q. Well you did talk to Officer Reynolds after this tragedy, didn't you?

A. Yes sir.

Q. And I want to be as fair to you as I can. Think back. Didn't you tell him that you must have run the STOP sign? Didn't he charge you with it?

A. He charged me with failing to yield the right-of-way.

MR. GIBBS: Your Honor, is he asking what this man was charged with?

Q. And what was your answer?

A. Sir?

MR. GIBBS: What did you ask him? What he was charged with? I don't think that is competent.

MR. HOWE: Well, what I am getting at is based on what he told him.

Q. Didn't you agree with him that you had done that?

A. I probably agreed with him that I was in the wrong. I don't know. But as far as running the STOP sign, I don't think that I did that, because I had stopped at that crossing many a time before.

Q. Yes, sir, but we are talking about this morning.

A. Yes, sir.

Q. And you did agree with him that you were at fault, didn't you?

A. Well at the time, it had knocked me out of the seat and I was kind of shook up then, and I don't know, I may have agreed with him that I might not have stopped, but I don't think so.

Q. Well, as a matter of fact, didn't you later go by and see little Mrs. Vaughan's father? Didn't you stop by his home and discuss it with him?

A. We stopped by there the next day to get some information, *some insurance information* that the company wanted. The sales manager was with me.

MR. GIBBS: Your Honor, I wonder if you would excuse the jury.

THE COURT: Yes, sir.

(Jury leaves the courtroom)

THE COURT: All right, Mr. Gibbs.

MR. GIBBS: If your Honor please, I always regret that something like this happens.

THE COURT: Yes, sir.

MR. GIBBS: I am not sure how realistic this jury is, and I hate to be in the position of throwing away two days' effort and involving a lot of people.

THE COURT: Yes, sir.

MR. GIBBS: This witness has mentioned the existence of insurance, and I would like to tell you that I had cautioned him in my office on more than one occasion, and told him "Do not mention it."

THE COURT: You are not moving for a mistrial at this time, are you?

MR. GIBBS: For the record I think I would like to move for a mistrial. I am half-hearted about it.

THE COURT: All right.

MR. GIBBS: I mean, honestly, I don't think it is my fault. I had cautioned him about it.

THE COURT: I am sure it wasn't your fault, and the witness isn't versed in the terms of the law. And of course it wasn't Mr. Howe's fault.

MR. GIBBS: No, sir, I didn't mean that at all.

MR. HOWE: It wasn't in response to my question.

THE COURT: Let me look at this Pardue case just a minute. I remember Judge Bonham wrote that concurring opinion in Pardue vs. Pardue [167 S.C. 129, 166 S.E. 101] and he said in part:

"From such state of facts every intelligent juror on that panel knew before any question was asked that defendant was protected by indemnity insurance."

I am of the opinion, if you want me to, I will be glad to instruct the jury now, or if and when the case goes to the jury, I can instruct them then. I don't think that the error at this time is of such magnitude or of such information as to warrant granting a mistrial. He hasn't said indemnity insurance. He just said some insurance information. Wasn't that his phraseology?

MR. GIBBS: Yes, sir.

MR. HOWE: Yes, sir. It could have been collision coverage.

THE COURT: This is that old case where a wife sued her husband under the guest statute, Pardue vs. Pardue, 167 S.C. 129, 166 S.E. 101–104, and the part about insurance is not in the main opinion that was written by Justice Carter, at which I am not particularly surprised, but

the Supreme Court of South Carolina went on to say:

"The Court will take notice that in this day of the use of automobiles, many owners of such machines carry insurance to indemnify them for damages claimed of them for any injuries inflicted by their cars. From such state of facts every intelligent juror on the panel knew before any question was asked that defendant was protected by indemnity insurance."

I can do one of two things. I can let it go, which means that I won't emphasize it. I can tell that jury something and take the risk of emphasizing it.

I don't want to put you on the spot, but I will take your advice without putting you on the spot. I will listen to you, rather, and then I will decide what I think is best.

MR. GIBBS: If your Honor pleases, in fairness to my client, I have to make the motion.

THE COURT: I understand that, sir. I am going to refuse the motion at this time. The question in my mind is whether or not justice will best be served by my mentioning the fact to the jury and saying "Disregard it." And maybe they might think that I am emphasizing it. Or not mentioning it. I think I can make it pretty plain to them that that is not an issue in this case, if you want me to.

MR. GIBBS: Personally, I think the less said about it, your Honor, the better it is. The more you try to correct it, the more you emphasize it.

THE COURT: Yes. That is like when you send a jury out and bring them back and re-charge them on some little something, you sometimes risk emphasizing it. I agree with you.

MR. GIBBS: I waited a couple of minutes before I interrupted the proceedings, because I was trying to hide what I was thinking about.

THE COURT: I understand. Well, I won't mention it, but in the general charge I will emphasize very strongly that nothing outside of here is to be considered.

What about it, Mr. Howe?

MR. HOWE: Your Honor, it just wasn't in response to my question.

THE COURT: Well it has happened to everybody else who has ever tried a case. I mean, you just can't help it. It comes out. And he didn't mean any harm by it.

MR. HOWE: While the jury is out, just tell him not to mention it again, your Honor.

THE COURT: Yes. [Emphasis supplied.]

As counsel for plaintiff pointed out in the trial, the reference to insurance was unresponsive to his question.

In Gleaton v. Green, 156 F.2d 459 (4th Cir. 1946), a case which arose in South Carolina, Judge Dobie noted:

The general principle that the voluntary or intentional introduction into evidence, either directly or indirectly, by the plaintiff of the fact that a defendant in a tort action is protected by liability insurance, is prejudicial error and grounds for a mistrial, is too well settled to warrant extensive citation of authority. James Stewart & Co. v. Newby, 4 Cir., 266 F. 287; Jupollo Public Service Co. v. Grant, 4 Cir., 42 F.2d 18; Haynes v. Graham, 192 S.C. 382, 6 S.E.2d 903; Cox v. Employers Liability Ins. Corporation, 191 S.C. 233, 196 S.E. 549.

This rule should not be extended, however, to permit the party to obtain a mistrial merely because a witness very incidentally interjects a casual and ambiguous reference to insurance into an unresponsive answer. In such cases the usual procedure is that the judge will instruct the jury to disregard the testimony and strike it from the record. Vollington v. Southern Paving Con-

struction Co., 166 S.C. 448, 165 S.E. 184.

The instant case would seem to be at the extreme in the range of cases where the prejudice would not seem to require the granting of a mistrial. The witness' reference to insurance was casual, oblique and in no way responsive to the question asked. * * *

Under these circumstances, we are convinced that it was not error to deny defendant's motion for a mistrial. * * *

We note again that defendant never asked for any * * * (cautionary instructions) though particularly accorded an opportunity to do so. 156 F.2d at pages 461–462.

The colloquy in the instant matter closely resembles the colloquy in Gleaton v. Green, supra. The *ratio decidendi* there seems particularly apropos to apply here as well.

Senior District Judge George Bell Timmerman presided at the trial of Gleaton v. Green, supra. His Order [1], precipitated by defendant's motion, provides a cogent beacon of reasoning to guide this Court's decision. There had been a casual reference to "an insurance man," the learned judge pointed out:

It was never intended that the rule here invoked by the defendant should be used to obtain a new trial without some reasonable showing of prejudice. If there is no strong probability of an injustice having been done then there is no sufficient reason for the application of the rule, which was intended to rectify wrongs, not to create them.

* * * * * *

Even if the issue before the Court had been whether or not the defendant carried insurance, the reference to "an insurance man," under the circumstances hereinbefore recited, could not be considered so much as a scintilla of evidence in support of the affirmative of that issue; and it would have been insufficient to warrant the submission of that issue to a jury for decision. The defendant may or may not have had insurance; the plaintiff may nor may not have had insurance; and the witness himself may or may not have had insurance, but there is nothing in the record to indicate which, if any one, of the alternatives mentioned existed as a fact, nor is there anything in the record to indicate that the witness used the expression "an insurance man" in any other sense than as descriptive of the party referred to. For instance, he might have said: "I talked to a preacher", or, "I talked to a bricklayer", or, "I talked to a house painter." The issue here is not whether the word "insurance" was used, but whether it was used in a way or in a sense prejudicial to the defendant. In this connection it should be borne in mind that the remark came from the defendant's own witness.

If the rule should be established that a mere reference to "insurance" in a case of this character, however incidental or harmless the reference might be, would warrant ordering a mistrial, it could become the occasion for many miscarriages of justice. All a litigant would have to do to obtain a mistrial, if he thought the trial was going against him, would be to induce one witness to make some reference to insurance.

There are two reasons why the Court did not instruct the jury to disregard the witness' reference to "an insurance man". First, and foremost, it was not thought that members of the jury had heard the comment and, even if they had, it was extremely doubtful that the statement had made an impression on them, since it was not an unquali-

[1]. Eastern District of South Carolina, Civil Action No. 1311, filed January 14, 1946; not reported in the Federal Supplement.

fied statement of fact, only a belief. To have commented on the statement undoubtedly would have created the impression that the Court thought the defendant had insurance; and certainly the Court had heard nothing during the trial of the case to warrant any such conclusion. In the second place, the very able and alert counsel for the defendant evidently thought it was a part of wisdom not to request the Court to comment on the incident. They were careful to request the excusing of the jury before making the point, and they had at least two opportunities thereafter to make a request in written requests to charge, or verbally at the conclusion of the Court's charge. Since, at the time of the trial, I was impressed that the complained of remark had made no impression on the jury, even if it had been heard, which is doubtful as it was directed to the Court, I felt it would be unfair to the defendant to call attention to it. Had I done so it is likely that an impression would have been created that the Court thought the defendant had insurance.

As is stated in McCormick on Evidence (1954) § 168, p. 356.

[T]he fact of insurance may be elicited unintentionally by examining counsel, when the witness makes an unexpected or unresponsive reference to insurance. The witness often is unaware of the conspiracy of silence about insurance and makes with utmost naturalness a reference to this all-pervading fact. The reference will be stricken on request but is usually not a ground for mistrial or reversal.

To the same effect is the opinion by the late Justice Oxner in McLeod v. Rose, 231 S.C. 209, 97 S.E.2d 899, 901; commented upon in 11 S.C.L.Q. 41, 48

(1959); Cf., American Fidelity Fire Ins. Co. v. Hood, 37 F.R.D. 17, 20, 21 (E.D. S.C.1965).

■ As was noted above, there must be a reasonable showing of prejudice to the defendant from the mentioning of the word "insurance." In commenting upon the use of the word [2] by counsel on voir dire, Judge Freedman said in Kiernan v. Van Schaik, 347 F.2d 775, 782 (3rd Cir. 1965):

The word "insurance" is not outlawed from the courtroom as a word of magical evil. Jurors are not unaware that insurance is at large in the world and its mention will not open to them a previously unknown realm.

See also Pardue v. Pardue, 167 S.C. 129, 166 S.E. 101, 104 (concurring opinion).

■ The witness' testimony during the trial, considered in light of the colloquy following and the cases and authorities mentioned, cause this Court to conclude that the unforeseen interjection of the word "insurance" was not prejudicial to defendant and in no way affected the outcome of the trial.

There is no evidence that the jury's verdict was based upon bias, passion, or caprice, nor was it based upon any other factors dehors the record.

The evidence reveals that the plaintiff was 20 years old on the date of his injury on March 11, 1964. He is married and has two young children. He completed his senior year at high school but did not graduate. At the time of the accident he was earning $1.30 an hour as an employee of the Smith-Corona Company. His previous job at Utica Tool Company, which he left because of the requirement that he work at night, paid him at a rate of $1.90 an hour.

■ From the time of the accident to the time of trial plaintiff has been more often than not unable to work. Medical

---

2. As Mr. Justice Holmes said in his often quoted semantic thrust: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372 (1918).

testimony established that the accident about which complaint was made substantially aggravated a pre-existing[3] back condition which caused plaintiff to have to spend considerable time in hospitals and confined at home. He experienced the rigors of a spinal fusion operation, which is really two operations, after which he was encased in a body cast for several months. Subsequently he was fitted with a steel chair brace, and thereafter a corset which he was still wearing at the time of trial. During this time plaintiff suffered extreme and agonizing pain for which narcotics had to be administered. His treating physician expressed the opinion that he was 100% disabled to perform his former employment and 75% permanently disabled for the future.

The jury's verdict was for plaintiff in the amount of $69,420.00 actual damages. The Court sitting without a jury would have rendered a different amount. Despite the "sophistication" of our civilization, we have still not come up with a yardstick or other device to accurately measure the slings and arrows of injury, pain, and anguish. How much is it worth? The question is rhetorical, but it can be safely said that even among the most acquisitive in our society, good health and well being is infinitely more valuable than money. Still, a "figure in dollars and cents, must be determined." Medlin v. United States, 244 F.Supp. 403, 410 (W.D.S.C.1965). The jury made such a determination, after being thoroughly instructed by the Court.

Should this determination be disturbed because it is "excessive?" The applicable principles which govern a trial court were discussed by Mr. Justice Taylor (now Chief Justice) in Haselden v. Atlantic Coast Line R. Co., 214 S.C. 410, 53 S.E.2d 60, 70:

"When there is any margin for a reasonable difference of opinion in the matter, the view of the Court should yield to the verdict of the jury rather than the contrary."
* * *

"The court must respect the verdict of the jury in fact as well as in pretense or theory and must not interfere or substitute its own judgment for that of the jurors, for to do so would violate a constitutional privilege to have the fair verdict of the jury and not the fair judgment of the court." * * *

The rule is: The trial judge will not interfere with a jury's verdict simply because it is greater than his own estimate. Only where the verdict is so grossly excessive as to shock the conscience of the court and clearly manifest that it was the result of caprice, passion, partiality, prejudice, corruption, or other improper motives, will the court intervene. In determining whether a verdict is excessive it must be remembered that the maximum amount which a jury might properly award as damages under the evidence in a personal injury case cannot be determined with any degree of certainty, and must be largely a matter of judgment. The view most favorable to the plaintiff must be inferred from the evidence, and if there is substantial evidence to sustain the verdict it will not be disturbed.

■■ Consideration can properly be given to the impaired purchasing power of money and the increased cost of living. The idea behind providing money compensation for personal injuries is to provide something of value for the injury. Jennings v. McCowan, 215 S.C. 204, 55 S.E.2d 522, 531, 532. Money, and of more importance, what it will buy, is the only recompense the law can make available in this case.

3. Plaintiff's greater susceptibility to injury does not serve as an "off-set" for a negligent defendant. 65 C.J.S. Negligence § 134. Defendant must accept plaintiff in the condition he is in at the time his neg-ligence is brought to bear. Paraphrasing a celebrated apothegm, plaintiff must be accepted for better or worse, in sickness or in health.

■ Quoting Judge Parker in Virginian Ry. Co. v. Armentrout, 166 F.2d 400, 407, 4 A.L.R.2d 1064 (4th Cir. 1948), in reversing an award for excessiveness:

> Ordinarily, of course, the amount of damages is for the jury, and whether a verdict should be set aside as excessive is a matter resting in the discretion of the trial judge. This, however, is not an arbitrary but a sound discretion, to be exercised in the light of the record in the case and within the amounts prescribed by reason and experience; and where a verdict is so excessive that it cannot be justified by anything in the record or of which the court can take judicial notice, it is the duty of the judge to set it aside.

See also 3 Barron & Holtzoff Federal Practice and Procedure (Wright Ed.) § 1304. Under all the facts appearing, the verdict is clearly not excessive, nor does it shock the conscience of the Court.

Defendant has also asked the Court to consider remittitur of a portion of the verdict. Asking this Court to exercise its discretion as "the thirteenth juror," Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 353 (4th Cir. 1941), defendant says that the verdict is "unduly liberal in view of the credible medical evidence regarding the plaintiff's future progress and diminishing disability."

■ First of all, it is not the function of the trial judge to say which of the experts is more credible. "A medical expert may be asked to give the court the benefit of his medical knowledge so far as it may be relevant and material to an issue before the court * * *." Thornton v. Victory Carriers, Inc., 338 F.2d 959, 960, 961 (4th Cir. 1964). And as was recently pointed out in Standard Oil Co. of California v. Perkins, 347 F.2d 379, 388 (9th Cir. 1965):

> Expert testimony, in common with all testimony, merely establishes probability, not certainty. Even great probability is not certainty.

And it remains the exclusive function of the jury to assess the relative probabilities and establish the facts.

■ As to the alleged "undue liberality" as a basis for remittitur here, it does not appear that remittitur would correct an "unjust verdict," Aetna Casualty & Surety Co. v. Yeatts, id., because there is no apparent injustice present.

Also, the remittitur for which defendant pleads is inconsistent[4] with his allegations of bias, passion, caprice, etc., because if that were present the verdict would have to be set aside entirely. Vernon v. Atlantic Coast Line Ry. Co., 221 S.C. 376, 70 S.E.2d 862, 868, 869.

The jury's verdict is amply supported by the evidence, and by reason, and prejudice to defendant is nowhere apparent. Accordingly, defendant's motions should be denied. Therefore, defendant's motions are denied, and the Clerk will make the appropriate entry.

And it is so ordered.

---

4. The fact that defendant's averments are inconsistent, has not influenced this decision.