20285

William M. ESTES, Jr., et al., Appellants, v. Thomas W. RUFF, Jr., et al., Respondents.

(228 S. E. (2d) 671)

*Messrs. Savage, Royall, Kinard & Sheheen,* of Camden, and *Nelson, Mullins, Grier & Scarborough,* and *Berry & Lydon,* of Columbia, *for Appellants,*

*John A. Martin, Esq.*, of Winnsboro, *for Respondents,*

September 23, 1976.

LEWIS, Chief Justice:

The following from the order of the lower court correctly states and disposes of the issues in this appeal:

"This action is one under the Uniform Declaratory Judgment Act, Section 10-2001, *et seq.,* 1962 Code of Laws, to construe the rights of the parties hereto under the Will of

Thomas W. Ruff and the subsequent agreement between Thomas W. Ruff, Jr., and William M. Estes and William M. Estes, Jr. The action was precipitated by the condemnation for airport purposes of a portion of the property devised under said Will. The condemnation award was deposited with the Clerk of Court for Fairfield County and is presently held in trust for the benefit of the proper beneficiaries as determined by this proceeding.

"Three Thomas W. Ruffs are involved. For convenience, the first shall be referred to as the 'Testator.' The only son, Thomas W. Ruff, Jr., shall be referred to as the 'Testator's son.' Thomas W. Ruff, III, the deeded and adopted son of Thomas W. Ruff, Jr., shall be referred to as the 'child.'

"The key question is whether or not Thomas W. Ruff, III, the child deeded to Thomas W. Ruff, Jr., after the execution of said Will by Thomas W. Ruff but before his death and legally adopted by Thomas W. Ruff, Jr., after the death of Thomas W. Ruff, is the residuary beneficiary under Item 5 of said Will.

"The Will of Thomas W. Ruff contains two paragraphs which relate to the disposition of real property. The devise in Item 6, although not an issue, has significance. Items 5 and 6 read as follows:

Fifth: To my son Thomas W. Ruff, junior, I give and devise, subject to the conditions and limitations hereinafter made, and subject to the charge hereinbefore made, the tracts of three hundred (300) acres and three hundred and seven (307) acres, designated on a plat made by J. L. Brice, Surveyor, dated May 10, 1923, and recorded in the office of the Clerk of Court for Fairfield County, South Carolina, in Book "1" of Plats at page 78 as tracts one (1) and two (2), respectively, on said plat, said tracts of land being situate in Fairfield County, South Carolina. The said tracts of land being situate in Fairfield County, South Carolina. The said tracts of land are devised to my said son Thomas for and during the term of his natural life, and at his death to his

children then living, the issue of a deceased child to represent the parent and take the share the parent would have taken if living. If my said son shall die without issue then living then said land to go to the children of my daughter Blanche R. Estes, deceased, for and during the terms of their joint lives and at their respective deaths to their respective issue, and in the event of the death of either of the children of my said daughter Blanche R. Estes, deceased, without issue then living, his or her share to go to the survivor of them, subject to the same conditions and limitations. In all contingencies arising the issue of a deceased child shall represent the parent and take the share the parent would have taken. Should there be no lineal descendents of my daughter Blanche living at the death of the survivor of my said grandchildren, and such grandchildren, or either of them having taken by reason of the contingency hereinbefore mentioned, then said tract of land is to go to the Epworth Orphanage of Columbia, South Carolina, to be known as the Ruff trust, to be used for the care and benefit of the orphans therein, as the managing and governing body of said orphange may think best.

Sixth: I give and devise to my two grandchildren, Cathryn Isabelle Estes Cathcart and William Mills Estes, junior, children of my deceased daughter Blanche Ruff Estes, subject to the limitations hereinafter mentioned, the tract of land in Fairfield County, in the State aforesaid, containing two hundred and seventy-five (275) acres, more or less, designated on the plat made by J. L. Brice, Surveyor, dated May 10, 1932, and recorded in the office of the Clerk of Court for Fairfield County, in the State aforesaid, in Book "1" of Plats at page 78, as tract number three. The said tract of land is devised to my said grandchildren for and during the term of their natural life, respectively, and at their respective deaths to their respective issue then living, and in case both of said grandchildren shall die without issue then living, then the same to go to my son Thomas, or his issue

if he be then dead, in all cases the issue of a deceased child taking the share the parent would have taken if living. In the event of the death of one of my said grandchildren without issue then living, his or her share in said land shall go to his or her surviving sister or brother for life with limitations precisely as provided in their original share. Should there be no lineal descendents of my said grandchildren living at the death of the survivor of them, and should my said Thomas be then dead and none of his issue then living, then said tract of land to go to the Epworth Orphanage as hereinbefore provided as to tracts one and two.

"The petitioners contend that Item 5 of the Testator's Will devises the two tracts of land therein described to the Testator's son for life; that the words 'and at his death to his children then living,' mean, as a matter of law, natural children born of his marriage and should no natural children be born, other contingent beneficiaries inherit under the Will; that Item 5 is without ambiguity, therefore, testimony of the surrounding facts and circumstances to establish the intention of the Testator is improper.

"The Respondents contend that the language 'and at his death to his children' does not, as a matter of law, limit the inheritance to children born to the Testator's son. Their contention is that the term 'children' as used in a Will to designate beneficiaries is not a technical, legal term in that a fixed and determined meaning must be given to it regardless of the sense in which it is employed. They further contend that it is a flexible term and is subject to such construction as will give effect to the intention of the Testator. Respondents agree that if the Will itself specifically includes or excludes adopted children, then there is no ambiguity, but contend that when the Will merely uses the word 'children' that the said word is susceptible of more than one meaning and evidence of surrounding circumstances is necessary to ascertain and give effect to the intention of the Testator. The Respondents also contend the use of the words 'children' and

'issue' creates an ambiguity and that upon consideration of the surrounding facts and circumstances the intention to include the adopted child is clearly shown.

"From a reading of the entire Will, I find nothing to indicate an intention to include only children of the blood, or to indicate clear intention to include an adopted child of the Testator's son. In this event, it is appropriate to seek the intent of the Testator at the time of the making of the Will from the 'four corners of the Will,' in the light of surrounding circumstances.

"By stipulation, and/or undisputed testimony, not objected to, I find these facts:

"The Testator's son had had no children of his marriage and no adopted children at the time of the execution of the Will.

"The Testator's son was married the 23rd day of February, 1927, and, therefore, had been married five years and four months when the Testator made his Will.

"The wife of the Testator's son not only had not given birth to a child but had had no pregnancies during her marriage.

"That the Testator's son was over 34 years old when the Will was made and his wife was over thirty years of age and childless.

"The Testator had two daughters and only one son.

"The Testator made no change in his Will after his son obtained possession of 'a son' by deed.

"The Testator knew of the child being in the home of his son some eleven months before the death of the Testator.

"The child was named for the Testator prior to the Testator's death, and this fact was known to the Testator.

"The Testator had the mental and physical capacity to change his Will after the child came into possession of his

son and before his death. (There was evidence he suffered several strokes but that he continued to travel, speak, and his mind was not affected.)

"Additional facts established by the uncontradicted testimony of the Testator's son unless violative of the 'Dead Man's Statute' are these:

"The Testator on several occasions prior to his making his Will requested and urged his son to adopt 'a boy.'

"On the day of the execution of his Will, the Testator went to see his son and told him he had changed his Will to eliminate his daughter, Myra, and to devise him two tracts. (This proved to be correct.) He also told the son he wanted him to go ahead and adopt 'a boy.'

"Further, that after the making of the Will he continued to urge his son to adopt 'a boy.'

"The 'Dead Man's Statute', Section 26-402 of the 1962 Code of Laws of S. C., does not preclude this testimony. Testimony is disallowed: 'When the present or previous interest of the witness may in any manner be affected by the testimony or in the event of the trial.' *Norris v. Clinkscales*, 47 S. C. 488, 25 S. E. 797; *Long v. Conroy*, 246 S. C. 225, 143 S. E. (2d) 459. Mr. Ruff was devised a life estate and this can neither be enlarged nor diminished by any outcome of these proceedings.

"Both the Petitioners and the Respondents have called our attention to the recent South Carolina cases of *Limehouse v. Limehouse*, 256 S. C. 225, 182 S. E. (2d) 58; and *Turner v. Turner*, 260 S. C. 439, 196 S. E. (2d) 498.

"In *Limehouse*, although not a similar factual situation, we do find the phrase in the will 'Childless (without heirs)' to be called a 'latent ambiguity' by the Court and the Court approves the proposition that 'circumstances known to the testator at the execution of his will are an admissible aid in construing doubtful provisions, but the main recourse must be to the language used.'

"Turner also presents a different factual situations but the reasoning of the Court gives us some guidance in the instant case. In the opinion authored by Mr. Justice Littlejohn, the Court reversed a finding of the trial Judge that the adopted grandson qualified as a residual beneficiary unless something in the will itself indicated that he should be excluded. But the Court further states:

The testatrix died approximately twenty-five years before the adoption of the defendant. The adopted grandson will not be included as one to inherit *unless* it affirmatively appears that such was the intention of the testator. (Emphasis ours)

"The Court further quotes from *Limehouse,* citing an annotation in 86 A. L. R. (2d) 12, 48, which gives the general rule of construction followed by this significant paragraph:

There is nothing in the *record before us* from which an inference can be drawn that the testatrix *intended to include an adopted grandson* of Fred J. Turner in the class gift. We hold the trial Judge was in error in ruling that the defendant took under the will. (Emphasis ours)

"The Court did not say that there was nothing in the will, but 'the record.' The finding of the Court is consistent with the majority view in respect to adopted children being included or excluded as a class when there is no evidence of intention to include such child. The Court does not say that as a matter of law 'children' means only children born to the life tenant, but in the absence of anything in 'the record' to support an inference to include an adopted grandson that such adopted son would be excluded.

"The record in this case starts with the Will. The fact that the class of remainderman after the life tenant (Paragraph 6) was restricted by the use of the term 'issue then living' and the class of remaindermen after the life tenant in Item 5 was vested by the term 'his children then living' is clear

and undisputed. When considered in the light of the surrounding facts and circumstances they become significant. The surrounding facts and circumstances, known to the Testator at the time of the execution of the Will are set forth above. The Testator's knowledge that only a son of his son could carry on his name could be the only reason for the Testator's insistence of his son to adopt 'a boy.' The Testator would be found to approve adoption to urge his son to adopt a boy. The Testator knew that a marriage of over five (5) years had not produced children and the son had no natural or adoptive children when the Will was made. On the very day the Testator made his Will (knowing of the language of the Will) he encouraged his son to adopt a boy. The fact that his son in fact obtained a son in the lifetime of the Testator, named the child for the Testator, and the Testator made no effort to change his Will to include or exclude the adopted child would be some circumstance which would tend to substantiate a finding that the Testator thought his Will included the adopted child at the time of the execution and therefore there was no need for any further clarification.

"When the language in a will is ambiguous or doubtful in meaning, this Court should place itself as nearly as practicable in the position of the Testator in order that the language used might be interpreted from his viewpoint as an aid in arriving at his intent, taking into consideration the Testator's situation and the surrounding circumstances.

"From the language used in the Will, the surrounding facts and circumstances in the record and the situation and expressions of the Testator, I find that the Testator's intention was to include any child of his son, whether adopted or born of his marriage. I, therefore, find, that in the event the adopted children Thomas Ruff, III, survives his father, the Testator's son, that he shall be the sole residual devisee under Item Five of the Will, provided there are no other children adopted or born to Thomas Ruff, Jr., the Testator's son. In the event the said, Thomas

Ruff, III, does not survive his adoptive father, then the issue of Thomas W. Ruff will be the residual devisees of this property under the terms of the Will.

"In regard to the money paid in trust to the Clerk of Court for Fairfield County by the Airport condemnation, I find and dispose as follows:

"The income from the principal amount derived from the property devised in Item Five of the Will shall go to the holders of the property for the lifetime of the former life tenant, Thomas W. Ruff, Jr., under a sale of his life estate. Upon the death of Thomas W. Ruff, Jr., the principal shall be distributed to the remaindermen as found by the Court in this Order.

"The income from the principal amount derived from the property devised in Item Sixth shall be paid equally between the life tenants, William Estes and Catherine Cathcart. The payment of the income after the death of either of these life tenants, and the payment of the principle after the death of the life tenant is not before the Court and the Court makes no expression as to this.

"It Is So Ordered."

The judgment is accordingly affirmed.

NESS, J., and JOSEPH R. MOSS, Acting Associate Justice, concur.

LITTLEJOHN and RHODES, JJ., dissent.

RHODES, Justice (dissenting):

Disagreeing with the majority opinion, I dissent.

Although the word "children" is not a definitive or inflexible term, the word "children" does not include an adopted child unless it is manifest from the language of the will and the surrounding circumstances that the testator intended to include an adopted child because in its ordinary and popular

meaning "children" as used to designate beneficiaries means immediate or first generation, legitimate offspring of the first degree. Annot., 86 A. L. R. (2d) 12 (1962); 95 C. J. S. Wills § 653 (1957).

The recent case of *Turner v. Turner,* 260 S. C. 439, 196 S. E. (2d) 498 (1973), involved the question of whether an adopted grandson of the testator's brother should take as a reminderman. While the language used in the will and other aspects of the *Turner* case are not apposite to the instant case, the rule is therein stated that "[s]uch an adopted grandson will not be included as one to inherit unless it affirmatively appears that such was the intention of the testator." I also find the following from *Hutto v. Ray,* 192 S. C. 364, 6 S. E. (2d) 747 (1940):

"The words used are, 'my children and after their death *to their children'.* The legal construction of the words which we have italicized accords with its popular signification, namely, as designating the immediate offspring; for in all cases in which it has been extended to a wider range it was either used synonymously with a word of larger import, as 'issue', or else the context required such interpretation."

All jurisdictions, except those which have enacted statutes to the contrary, appear to recognize the principle of law that the word "children" in its primary sense means blood relationship. In *Parker v. Mullen,* 158 Conn. 1, 255 A. (2d) 851 (1969), the Connecticut court states this principle in the following language:

"It is true, as the plaintiff points out, that the word 'children', in its primary meaning, connotes blood relationship and, except when the testator or settlor is the adopting parent, will not be construed as embracing an adopted child unless a clear intent appears that the word be given a more extended meaning."

From the above authorities I glean the rule that absent a clear contrary intention of the testator, the adopted son of a

person other than the testator will not inherit under the use of the term "children". It then becomes necessary to ascertain the intention of the testator as the same appears from a full and complete consideration of the entire instrument when read in the light of circumstances known to the testator at the time of the execution of the will, the cardinal rule of construction being to ascertain and effectuate the intention of the testator, unless that intention contravenes some well settled rule of law or public policy. While there are certain rules to be followed in seeking such intention, they are all subservient to the paramount consideration of determining what the testator meant by the term used. *Black v. Gettys,* 238 S. C. 167, 119 S. E. (2d) 660 (1961); *Shelley v. Shelley,* 244 S. C. 598, 137 S. E. (2d) 851 (1964).

In reviewing the evidence presented on this appeal it is to be borne in mind that this is an action in equity, tried by the judge alone, without a reference, and that this Court has the duty to find facts in accordance with its view of the preponderance of the evidence. *Townes Assoc. Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976).

The starting point of my examination is with the will itself. Considerable significance is placed by the respondents on the fact that the item Sixth class of remaindermen after the life tenant is restricted by the term "issue then living" while the class of remaindermen after the life tenant in item Fifth is created by the term "his children then living". They deduce from this circumstance that the testator used "children" rather than "issue" deliberately in item Fifth because "issue" is a stronger connotation of blood relationship than "children". This argument is considerably weakened, however, by the fact that in the sentence immediately following the sentence which contains the phrase "his children then living", the testator states "[i]f my said son shall die without *issue* then living then said land to go to the children of my daughter Blanche R. Estes, deceased . . ." (Emphasis added).

The appellants, on the other hand, read the items Fifth and Sixth as a clear indication that the testator went to great lengths to insure that the language used be given its normal, ordinary and popular meaning, and that his property should pass to descendents in his blood line. Appellants point to the provision in item Fifth which provides that "the said land to go to the children of my daughter Blanche R. Estes, deceased . . .", and assert that the word "children" as used in this instance can only mean natural children since the testator's daughter, Blanche, was dead at the time the will was written and could not adopt a child.

The extrinsic evidence presented to the trial judge was essentially uncontradicted. The fact that the testimony is basically uncontradicted is understandable in view of the fact that these relevant events occurred more than 40 years ago and involved in large measure alleged private conversations with the testator.

It is clear that in order for the respondents to prevail, they must affirmatively establish by the preponderance of the evidence that the intention of the testator *at the time of executing the will* was to include an adopted child by his use of the word "children"; otherwise, the word would be accorded its primary meaning of natural children. From the testimony hereinabove summarized, the respondents would have one deduce that when the testator executed his will on June 22, 1932, he knew or was convinced that his son and daughter-in-law could have no natural children although they had been married only five years and were respectively 34 and 30 years of age. It is further to be noted that the adopted child was not born until November 22, 1934, more than two years after the execution of the will and that, although the child was in the custody of the testator's son and his wife for about eleven months prior to the death of the testator, he was not legally adopted until after the death of the testator. As was stated in *Limehouse v. Limehouse,* 256 S. C. 255, 182 S. E (2d) 58 (1971):

"By the great weight of authority, the courts hold that a child adopted after the testator's death is not included in a gift to the 'child or children' of a designated person."

Whatever limited contact testator had with the adopted child was more than two years after the will was executed. The testator's son testified that the testator requested him to adopt a boy both before and after the execution of the will, and respondents contend that the attorney who drafted the will used the word "children" in order that an adopted child would be included. There is apparent agreement by the litigants that the attorney who drew the will was experienced and competent, and it is incredible that if the testator had specifically expressed to him the desire to have an adopted child take, he would not have expressed such desire in clear and specific language.

I find, therefore, after considering the will and all extrinsic evidence, that the respondents have failed to prove by the greater weight or preponderance of the evidence that it was the intention of the testator that an adopted child be included within the class of "his children then living" and, thus, entitled to take as a residuary beneficiary under item Fifth of the will.

I would reverse.

LITTLEJOHN, J., concurs.